[No. 1605.]

### P. WALSH, ET AL., RESPONDENTS, v. D. T. WALLACE, ET AL, APPELLANTS.

STIPULATION — CONSTRUCTION — IRRIGATION — APPROPRIATION OF WATER — RIPARIAN RIGHTS—DECREE. 1. Stipulation that within forty days appellants may apply for additional findings, file and serve notice of intention to move for new trial, and file and serve the statement on motion for new trial, allows performance of any of the acts within the time limited, and does not require the statement of motion for new trial to be filed, as provided by Comp. Laws, 3292, within five days after the notice of intention.

2. The doctrine of riparian rights does not prevail in Nevada.

3. To constitute a valid appropriation of water, there must be an actual diversion of it, with intent to apply it to a beneficial use, followed by an application to such use in a reasonable time.

4. There is not an appropriation of water by settling on land on a river and having it surveyed and marking its boundaries, or by cultivating wild grass produced by overflow of the river, or by grazing the land.

5. Where all the parties have done all the things necessary for a valid appropriation of water, and it is not claimed that plaintiffs have appropriated all the water, a decree, without any definite finding of amount appropriated, but only that plaintiffs had appropriated enough to irrigate certain portions of their land, which enjoins defendants from diverting any of the water, and from interfering therewith so as to prevent the water from flowing onto plaintiffs' lands in sufficient quantity to irrigate it, is too indefinite to be sustained.

Appeal from the Third Judicial District Court, Lander County; *A. L. Fitzgerald* and *W. D. Jones*, Judges.

Suit by Patrick Walsh and others against D. T. Wallace and others. Decree for plaintiffs. Defendants appeal. **Reversed.**

The facts sufficiently appear in the opinion.

*P. M. Bowler, Jr.,* and *Bigelow & Dorsey*, for Appellants:

I.　No watercourse, either surface or subterranean, is established by the evidence. No connection between the waters claimed by the plaintiffs and those appropriated by the defendants is shown by the proofs. It is well settled that a watercourse consists of bed, banks and water. It is not contended that the flow of water must be continuous, but it must have a well-defined and substantial existence. It may be dry at certain seasons of the year, but there must be a natural and periodic flow in a definite channel. As the plaintiffs here complained of diversions by the defendants from a natural stream to their injury, the burden of course devolved upon them of establishing the existence and continuity of the stream at and from the time plaintiffs' rights accrued to the date of the diversions complained of. (*Lux* v. *Haggin*, 69 Cal. 255.) The decisions in England and in the eastern states in this country sustain the contention that no vested rights can be acquired in any flowing water, other than surface streams, or underground streams having a distinct and definite channel and a course known and defined. (*Roach* v. *Driscoll*, 20 Conn. 541; *Ocean Grove* v. *Asbury Park*, 40 N. J. Eq. 450; *Delhi* v. *Youmans*, 50 Barb. 319; *Haldeman* v. *Burkhardt*, 45 Pa. St. 521; *Cross* v. *Kitts*, 69 Cal. 217; *Roach* v. *Driscoll*, 20 Conn. 540; *Hanson* v. *McCue*, 42 Cal. 303; *Ballard* v. *Tomlinson*, 24 Am. Law Reg. 636.) In *Strait* v. *Brown*, 16 Nev. 317, Judge Belknap, delivering the opinion of the court approving the cases of *Chatfield* v. *Wilson*, 28 Vt. 54; *Haldeman* v. *Bruckhart*, 45 Pa. St. 519, and *Mosier* v. *Caldwell*, 7 Nev. 363, says: "It has been conclusively established by a long line of decisions that percolating water existing in the earth is not governed by the same laws that have been established for mining streams.

No distinction exists in the law between waters running under the surface in defined channels and those running in distinct channels upon the surface. The distinction is made between all waters running in distinct channels upon the surface, whether upon the surface or subterranean, and those oozing or percolating through the soil in varying quantities and uncertain directions."

II. The decree is indefinite and uncertain, and therefore against law. The findings are that the plaintiffs and their predecessors had, on March 15, 1863, and until the commission of the grievances complained of, "appropriated and used the water of the said Reese river in sufficient quantity for irrigating and flowing over and through said lands and for watering their cattle, horses and stock, and for household and domestic purposes." The decree perpetually enjoins the defendants "from diverting any of the water of Reese river, and from in any way interfering with said water, in such manner as to prevent said water from flowing on the lands of the plaintiffs in sufficient quantity to irrigate the same."

III. To avoid future litigation the court should have determined the rights of the defendants specifically ascertaining and determining whether such rights were prior or subsequent to the rights asserted by the plaintiffs, and not left the matter at large. (*People* v. *Gold Run D. & M. Co.*, 66 Cal. 155; *Quint* v. *McMullen*, 103 Cal. 381, 383.)

IV. It does not appear either from the complaint or from the findings or from the decree whether the quantity of water required by the plaintiffs for irrigation is the whole flow of Reese river, or only a part of it. The law is clear, of course, that they are entitled to so much water only as they can apply beneficially; and that the surplus may be appropriated by some one else. (*National W. & M. Co.* v. *Hancock*, 101 Cal. 42; *Hague* v. *Nephi Irr. Co.*, 67 Am. St. Rep. 634, s. c. 16 Utah, 421; *Milheiser* v. *Long*, 61 Pac. Rep. (N. M.) 111; *Fifield* v. *S. V. W. W.*, 130 Cal. 552.)

V. The popular meaning, the one which courts have given the word "irrigation," the sense in which the word is employed, is defined to be the application of water to land by artificial means. (Long on Irrigation, sec. 1; Kinney on Irrigation, sec. 1.) A valid appropriation of water involves a diversion

of the water, and every diversion of water from a stream is artificial; it is a disturbance of the natural order of things. (*Charnock* v. *Higuerra*, 111 Cal. 473; Webster's Dictionary; *Power* v. *Switzer*, 21 Mont. 523, 55 Pac. Rep. 32; *Tookey* v. *Campbell*, 60 Pac. Rep. 397, and cases cited, *infra*.)

VI. In *Church* v. *Stillwell*, 54 Pac. 397, the court said, "In a suit to determine the priorities of such right (*i. e.*, water right), it is not sufficient for the plaintiff to merely allege in his complaint that he has the priority of right. That is a legal conclusion. He must specifically aver all of the substantive facts which are necessary to constitute such priority." (*North Brewing Co.* v. *Perrot*, 60 Pac. Rep. 403; *Farmers High Line Canal Co.* v. *Southworth*, 21 Pac. Rep. 1038, and cases *post*.)

VII. The burden of proof was upon the plaintiffs, and they must recover, if at all, upon the cause of action, if any, set out in the complaint, and not upon some other which may be developed by the proofs. (*Jones* v. *Prospect Mt. T. Co.*, 346; Angell on Watercourses, secs. 408, 413; *Mondrau* v. *Goux*, 51 Cal. 151; *Bryan* v. *Torrney*, 84 Cal. 136; *Shenandoah M. & M. Co.* v. *Morgan*, 106 Cal. 417; *Reed* v. *Norton*, 99 Cal. 617; *Ostega* v. *Corderro*, 88 Cal. 225; *Morenhout* v. *Barren*, 42 Cal. 284; *Gregory* v. *Nelson*, 41 Cal. 284; *Green* v. *Covilland*, 10 Cal. 331; *Mordock* v. *Clark*, 59 Cal. 693; *People* v. *Elk River*, 107 Cal. 215; Gould on Waters, secs. 263–4.)

VIII. The rights of appropriators of the water of a stream are to be determined by the condition of things at the time the appropriations were made. (*Proctor* v. *Jennings*, 6 Nev. 86; *Hague* v. *Nephi Irr. Co.*, 52 Pac. Rep. 769.)

IX. For a watercourse there must be a channel, a bed, to the stream and not merely low land or a depression in the country over which water flows. It matters not what the width or depth may be, a watercourse implies a distinct channel, a way cut and kept open by running water, a passage whose appearance is different from the adjacent land, discloses to every eye on a mere casual glance the bed of a constant or frequent streams. (*Gibbs* v. *Williams*, 25 Kan. 220, 37 Am. Rep. 241; *Barnes* v. *Sabron*, 10 Nev. 218; *Sweat* v. *Cutts*, 50 N. H. 439, 9 Am. Rep. 473; *Chicago, Kan.*

& W. R. R. v. Morrow, 42 Kan. 339, 22 Pac. Rep. 413; Simmons v. Winters, (Or.) 27 Pac. Rep. 7; Am. & Eng. Ency. Law, vol. 28, p. 944, and notes; Edgar v. Stevenson, 70 Cal. 286; Razzo v. Varni, 81 Cal. 289; Los Ang. C. Assn. v. Los Angeles, 103 Cal. 464; Barkley v. Wilcox, 86 N. Y. 140, 40 Am. Rep. 520; Green v. Carrota, 72 Cal. 268; McComber v. Godfrey, 108 Mass. 219, 11 Am. Rep. 349; Kinney on Irr., secs. 43 to 45; Long on Irr., sec. 32; Gould on Waters, secs. 41, 263, 264, and notes; Wait's Law of Cons. Eng. and Arch., sec. 172a.)

X.   If the stream known as Reese river, having its source in the mountains, flowed in a well-defined natural channel with bed, sides or banks, to and through the forks and then spread out, commingled with and sank in the soil, and the channel ceased, and no water remained to pass to the plaintiffs' lands in 1863, 1864, 1865, 1866, 1867, 1868, 1869, 1870 and 1871, then it ceased, at the point of sink, to be a watercourse, and plaintiff's have no right to it. (Walker v. New Mex. and S. P. Ry. Co., 165 U. S. 593; Broadbent v. Raimsbotham, 11 Exch. 602; Buffam v. Harris, 5 R. I. 243; McComber v. Godfrey, 108 Mass. 219, reported in 11 Am. Rep. 349; Green v. Carrota, 72 Cal. 268; Cass v. Dicks, 14 Wash. 75; Razzo v. Barni, 81 Cal. 295; Giefilan v. Schmidt, 64 Minn, 29; Meyer v. Tacoma L. & W. C., 35 Pac. Rep. 601; Benthall v. Seifert, 77 Ind. 302.)

XI.   The law governing surface streams is not applicable to percolating water or to subterranean water having no known defined channel or current. (Gould v. Eaton, 11 Cal. 64; Hanson v. McKue, 42 Cal. 303; Cross v. Kitts, 69 Cal. 217; S. P. B. R. Co. v. Dufour, 95 Cal. 615; Wheatly v. Baugh, 25 Pa. St. 528; Angell on Watercourses, sec. 4d; Gould on Waters, sec. 280; Haldaman v. Bruckhart, 45 Pa. St. 514; Delhi v. Youmans, 50 Barb. 316; Elster v. Springfield, 49 Ohio St. 82; Roach v. Driscoll, 20 Conn. 533; Brown v. Illins, 27 Conn. 84; New Albany R. R. Co. v. Peterson, 14 Ind. 112; Davis v. Spaulding, 157 Mass. 431; Acton and Blundell, 12 Mees. 431; Blanchard v. Weeks, Leading Case M. W. Rights, pp. 748, 764; Kannard v. Standard Oil, 89 Ky. 468; Taylor v. Welsh, 6 Or. 200; Lux v. Haggin, 69 Cal. 417, 419; Chasemore v. Richards, 7 H. L. Case, 359; River Co. v. Johnson, 2

L. & E. 444-5; *Mosier* v. *Caldwell*, 7 Nev. 363; *Taylor* v. *Tickas*, 64 Ind. 161; *Frazier* v. *Brown*, 12 Ohio St. 891; *Buffam* v. *Harris, supra; Bloodgood* v. *Ayers*, 108 N. Y. 400; *Collins* v. *Chartras G. Co.*, 131 Pa. St. 143; *Lybes' Appeal*, 106 Pa. St. 634; Washburn on Easements, 210, 364; Gould on Waters, secs. 263, 265, 282; Kinney on Irr., secs. 48, 49; Long on Irr., sec. 33; Wait, Law Cons. Engineering and Arch., secs. 251, 252, 253.)

XII.   The ownership of a water right, in the Pacific states, and, particularly in the State of Nevada, does not depend upon the possessory title or upon the legal title to land upon the stream.   It is simply a possessory right, acquired by a diversion of the water of the stream, consummated by its application to some beneficial use or purpose, and that prior to its diversion and such use by anyone else.   (Citations *supra*; Kinney on Irr., secs. 240, 241; Gould on Waters, secs. 227-9, 230-1 and notes; *Broder* v. *Natoma Co.*, 50 Cal. 621; *Broder* v. *Water Co.*, 101 U. S. 276; *Barnes* v. *Sabron, supra.*)

XIII.   Whoever was the first *to take* the water and apply it in good faith to some beneficial use has the first and best right to so much as was taken and used.   (*Atchison* v. *Peterson*, 20 Wall. 407; *Sturr* v. *Beck*, 133 U. S. 541; *Jennison* v. *Kirky*, 98 U. S. 453; *Tarter* v. *Spring Creek Co.*, 5 Cal. 398; *Stokes* v. *Barrett*, 5 Cal. 39; *Irwin* v. *Phillips*, 5 Cal. 143; *Conger* v. *Weaver*, 6 Cal. 556; *Hoffman* v. *Stone*, 7 Cal. 46; *Sharpe* v. *Hoffman*, 79 Cal. 404; *Lux* v. *Haggin*, 69 Cal. 447; *Ruply* v. *Walch*, 23 Cal. 455; *Osgood* v. *Eldorado*, 56 Cal. 571; *Butte Canal Co.* v. *Vaughan*, 11 Cal. 143; *Hill* v. *Lonorand*, 16 Pac. Rep. 267; *Younker* v. *Nichols*, 1 Colo. 551; *Stickler* v. *Colo. Springs*, 16 Colo. 61; *Drake* v. *Emhart*, 2 Idaho, 716; *Lobdell* v. *Simpson*, 2 Nev. 274; *Ophir S. M. Co.* v. *Carpenter*, 4 Nev. 534; *Reno Red. Works* v. *Stevenson*, 20 Nev. 269; *Curtis* v. *La Grande Co.*, 20 Or. 34; *Grand* v. *Windsor*, 2 Utah, 248; *Monroe* v. *Ivie*, 24 Pac. 673; *Barnes* v. *Sabron*, 10 Nev. 217; *Ophir* v. *Carpenter*, 6 Nev. 393; *Strait* v. *Brown*, 16 Nev. 317; *Dick* v. *Caldwell*, 14 Nev. 167; *Simpson* v. *Williams*, 18 Nev. 432-6; *Dalton* v. *Bowker*, 8 Nev. 190; *Hobart* v. *Wicks*, 15 Nev. 418; *Reno W. Co.* v. *Leete*, 17 Nev. 203; *Chiatovich* v. *Davis*, 17 Nev. 133; *Smith* v. *Logan*, 18 Nev. 149; *Schulz* v. *Sweeney*, 19 Nev. 359;

*Proctor* v. *Jennings*, 6 Nev. 83; *Jones* v. *Adams*, 19 Nev. 80.)

XIV.   Defendants had and have the right to change the
place of diversion, or to apply the water to different uses or
purposes from that to which it was originally appropriated,
so long as they did not and do not injuriously affect the rights
of others.   (Kinney on Irr., secs. 154, 233, 234, and notes;
Gould on Waters, sec. 237 and notes; Long on Irr., secs. 46,
50 and notes; Wait on Law of Cons. Eng. and Arch., p. 59,
sec. 75, and notes; *Knowles* v. *Clear Creek Mill*, 18 Colo. 209;
*Sieber* v. *Frink*, 7 Colo. 154; *Hammond* v. *Rose*, 11 Colo. 524;
*Fuller* v. *Swan River*, etc., 12 Colo. 12; *Davis* v. *Gale*, 32
Cal. 26; *Santa Paula* v. *Peralta*, 113 Cal. 45; *Kidd* v. *Laird*,
15 Cal. 161; *Stickler* v. *Colo. Springs*, 16 Colo. 61; *Ramelli* v.
*Irish*, 96 Cal. 214; *Hargrave* v. *Cooke*, 108 Cal. 72; *Maeris* v.
*Bicknell*, 7 Cal. 262; *Butte Mt. Co.* v. *Morgan*, 19 Cal. 609;
*Jenkins* v. *Bergin*, 13 Cal. 221; *McDonald* v. *Bear River*, 13
Cal. 221; *Kirman* v. *Hunnewell*, 93 Cal. 519; *Woolmar* v.
*Gariberger*, 1 Mont. 535; *Union M. & M. Co.* v. *Dangberg*,
81 Fed. Rep. 115; *Hobart* v. *Wicks*, 15 Nev. 418; *Jacob* v.
*Lawrence*, 98 Cal. 332; *Charwick* v. *Higurra*, 111 Cal. 473;
*Smith* v. *Corbett*, 116 Cal. 587; *San L. W. Co.* v. *Estrada*, 117
Cal. 168, 183; *Gallagher* v. *Montecito*, 101 Cal. 245; Pom. W.
R., sec. 69; *Hague* v. *Nephi Irr. Co.*, 52 Pac. Rep. 769.)

XV.   When a stream is a natural one, there can be no
doubt that all waters which flow into it become a part of
it, and subject to the same natural rights as the rest of the
water.   (Goddard on Easem., p. 51; *Wood* v. *Wand*, 3 Exch.
779; Washburn on Easem. 274; Angell on Watercourses, sec.
95; *Eddy* v. *Simpson*, 3 Cal. 249; *Hoffman* v. *Stone*, 7 Cal.
47; *Butte Con.* v. *Vaughn*, 11 Cal. 143; *Schulz* v. *Sweeney*, 19
Nev. 359; *Malad Irr. Co.* v. *Campbell*, 18 Pac. Rep. 52;
*Stickler* v. *Colo. Springs*, 26 Pac. Rep. 313; *Low* v. *Shaffer*,
33 Pac. Rep. 678.)

XVI.   The court erred in sustaining plaintiffs' objection
to, and in striking from the record as evidence in the case as
against P. Walsh, against whom they were offered, the docu-
mentary evidence in support of the plea of former adjudica-
tion and estoppel, to wit:   The judgment roll in the case of
*Ahlers, et al.*, v. *B. O'Toole*, *J. P. Thomas, et al.*, also the
judgment roll and proceedings for contempt and remittitur

on proceedings on *certiorari* from the supreme court of this State. A judgment or decree necessarily affirming the existence of any fact is conclusive upon the parties or their privy whenever the existence of that fact is again in issue thereafter between them.

XVII. The judgment in the contempt proceeding is a bar, evidence conclusive, against the plaintiff, P. Walsh, upon the questions involved in the action, and upon which it depended, and upon all matters which might have been litigated and decided in the proceedings whether decided or not. (Van Fleet's Former Adj., p. 418, *supra*; Citations, *supra*; *Croudson* v. *Leonard*, 4 Cr. 436; *Bissell* v. *Kellogg*, 60 Barb. 617; *Merritt* v. *Campbell*, 47 Cal. 545; *Newark* v. *Newark*, 22 Mich. 292; *Thatcher* v. *Gammon*, 12 Mass. 268; *State Bank* v. *Rude*, 23 Kan. 143; *Smith* v. *Whiting*, 11 Mass. 446; *Bates* v. *Spooner*, 45 Ind. 489; *Petersine* v. *Thomas*, 28 Ohio St. 596; *Barrett* v. *Failing*, 8 Or. 152; *Baxter* v. *New Eng. M. I. Co.*, 6 Mass. 278; *State* v. *Rainsburg*, 43 Md. 325; *Bruner* v. *Rainsburg*, 43 Md. 560; *Aurora City* v. *West*, 7 Wall. 82; *Doty* v. *Brown*, 4 N. Y. 71; *Spencer et al.* v. *Dearth*, 43 Vt. 104; *Shepardson* v. *Cary*, 29 Wis. 34; *Rodgers* v. *Higgins*, 57 Ill. 244; *Phelan* v. *Gardner*, 43 Cal. 306; *Thompson* v. *Myrick*, 24 Minn. 4; *Betto* v. *Chicago & S. R. Co.*, 43 Iowa, 602; *Smith et al.* v. *Kernocken*, 7 How. 198; *Lewis* v. *Lewis*, 106 Mass. 309; *Howell* v. *Goodrich*, 69 Ill. 556; *Blackinton* v. *Blackinton*, 113 Mass. 231; *Kern* v. *Strasberger*, 71 Ill. 303; *Gates* v. *Preston*, 41 N. Y. 113; *Cochran* v. *Couper*, 2 Del. Ch. 27; *Gunn* v. *Plant*, 4 Otto U. S. 664; *Willis* v. *Ferguson*, 46 Tex. 496; Bigelow on Estop., pp. 35, 36, 39, 43; Freeman on Judg., secs. 246-7, *et seq.* to 250, 254, 255, 256.)

XVIII. One who appropriates water for a useful purpose cannot be defeated in his right because he is not able to apply the whole amount of water to those uses at once. (*Barnes* v. *Sabron, infra; Kleinsmith* v. *Greiser*, 14 Mont. 484; *Low* v. *Rizor*, 25 Or. 503; *Senior* v. *Anderson*, 115 Cal. 503; *Simmons* v. *Winters*, 21 Or. 35; *Cole* v. *Logan*, 24 Or. 174; *Strait* v. *Brown, supra.*)

XIX. Prescription is a presumption of grant which arises in favor of the claimants against the true owner by reason of the conditions following: (1) Lapse of time; the time pre-

scribed by the statute in which an action must be brought to recover the possession of lands. (Angell on Watercourses, secs. 203-4.) (2) Adverse use under claim of right during the period prescribed, to wit: five years. (*Brace* v. *Yale*, 10 Allen, 44; *Sterns* v. *James*, 12 Allen, 552; *Thompson* v. *Pioche*, 44 Cal. 517; *Thompson* v. *Felton*, 54 Cal. 548.) (3) Knowledge and acquiescence by the true owner in the claim and adverse uses of the prescriptor. (Angell on Watercourses, C., secs. 210, 215a.)

XX. There are four elements under the law necessary to make out an adverse possession sufficient to constitute a defense of prescription: (*a*) The possession must be open, notorious, not clandestine. (Angell on Watercourses, p. 375, sec. 215.) (*b*) It must be hostile to plaintiffs' title, an invasion of his right. (Angell on Watercourses, sec. 219.) (*c*) It must be held under a claim of right, exclusive of any other right, as your own. (*Garrison* v. *McClusky*, 38 Cal. 78; *Lowell* v. *Frost*, 44 Cal. 471; *Thompson* v. *Pioche, supra;* Angell on Watercourses, secs. 216, 219c.) (*d*) It must be continuous and uninterrupted for a period of five years, prior to the commencement of the action. (*San Francisco* v. *Folde*, 37 Cal. 379; *San José* v. *Trimball*, 41 Cal. 536.) This period of five years need not be next preceding the commencement of the action. (*Cannon* v. *Stockman*, 36 Cal. 535.)

XXI. A right to the use of water may be acquired by prescription; the lapse of time prescribed by statute not only bars the plaintiffs of their rights, but vests a perfect title in the adverse holder. (*Cannon* v. *Stockman, supra;* Angell on Watercourses, secs. 200, 201, 204, 208; *Crandall* v. *Wood*, 8 Cal. 36; *American Co.* v. *Bradford*, 27 Cal. 360; *Authors* v. *Bryant*, 22 Nev. 246; *Boynton* v. *Longley*, 19 Nev. 76; *Union W. Co.* v. *Crary*, 25 Cal. 509; *Davis* v. *Gale*, 32 Cal. 35; *Evans* v. *Ross*, 65 Cal. 439; *Chauvet* v. *Hill*, 93 Cal. 409; *Smith* v. *Hawkins*, 110 Cal. 126; *Ewing* v. *Bernett*, 11 Pet. 41; *Sharpe* v. *Blankenship*, 59 Cal. 288; *Johnson* v. *Brown*, 63 Cal. 391; *Arnington* v. *Liscon*, 34 Cal. 381; *Langford* v. *Poppe*, 56 Cal. 73; *Unger* v. *Roper*, 53 Cal. 39; *P. M. Co.* v. *Owens*, 15 Cal. 135, 136; *Irwin* v. *Town*, 42 Cal. 326; *Talbott* v. *Singleton*, 42 Cal. 391; *Willis* v. *Wozencraft*, 22 Cal. 608; *Lawrence* v. *Webster*, 44 Cal. 385; *Dorlin* v. *McGilten*, 47

Cal. 485; *Bakersfield* v. *Chester*, 55 Cal. 98; *McLeran* v. *Benton*, 73 Cal. 329; *Webber* v. *Clark*, 74 Cal. 11; *Silvera* v. *Hanson*, 77 Cal. 579; *McCormack* v. *Sillsby*, 82 Cal. 72; *Gallagher* v. *Montecito*, 101 Cal. 244.)

*Henry Mayenbaum* and *J. B. Egan*, for Respondents:

I. The stipulation cannot be construed so as to import into it what it does not say, and what could never have been in contemplation of the parties and what would be senseless and utterly futile. Nothing of the kind appears in the stipulation. *De non apperentibus, et non existentibus eadam est ratio*, says the court in *Daniels* v. *Tearney*, 102 U. S. 421. The law never regards or presumes or requires a vain thing. (*Clark* v. *Crane*, 57 Cal. 629.) We cannot import into a stipulation reservations, or qualifications, which might readily have been inserted by the parties. If it was the intention of the parties stipulating that the statement may be filed after five days from the filing of the notice of new trial, the time required by statute, they could easily have said so in the stipulation. Not having so stipulated, the statute requiring the statement to be filed within five days from the filing of the notice must be followed. Having failed to file the statement in the time required by law, the statement is nugatory, and the court had no jurisdiction to consider or settle the same. True, the notice of motion for new trial was served earlier than it need to have been. But, having filed the notice, the statement must be filed in statutory time of five days. The Court, in *Chase* v. *Evoy*, 58 Cal. 352, says: "It is likewise immaterial whether the notice of the motion for a new trial was served earlier than it need to have been. No other notice was served, and the time, within which the code requires service of the statement to be made, commences to run from the date of the service of such notice, notwithstanding the notice could have been filed afterwards."

II. Hayne, in his excellent work on New Trial and Appeal, sec. 22, says: "If a party elects to give notice of intention before his time expires, he is bound by his election." (*Cooney* v. *Furlong*, 66 Cal. 520; *Campbell* v. *Jones*, 41 Cal. 518; *Burnheimer* v. *Baldwin*, 42 Cal. 32; *Le Roy* v. *Rassette*, 32 Cal. 171.)

III. The rights and limitations under the statute are

clearly expressed in the case of *The State* v. *Cheney*, 24 Nev. 222–7. The Court says: "Where the rights of either party to an action under this statute, *supra*, are limited in time, that the failure of either to exercise such rights within the time limited, unless the same is preserved by some authorized act, operates as a waiver of the same, and the attempted determination of such rights upon the merits over proper objection is without authority." Thus we see: (*a*) That the notice of intention for new trial was filed and served October 26, 1900. (*b*) That the court, at request of defendants, extended time to file statement sixty days from the 1st of November, 1900. (*c*) That said extension expired December 31, 1900. (*d*) That at every act of plaintiffs they saved their objection to the statement that the statement was not filed in time. (*e*) That the stipulation does not extend the time to file statement after the time required by statute; that the statement was filed January 5, 1901. Reason and authority combine in the conclusion that the statement be struck out and the appeal dismissed without going into the examination of this unduly cumbersome case of innumerable objections.

IV. The defendants contend that the waters of Reese river do not extend to plaintiffs' land, because there are no natural channels extending to plaintiffs' lands. It is not necessary to combat this contention of counsel, because the evidence on the part of plaintiffs not only tends to show, but by great and overwhelming preponderance does show, that Reese river does, and ever did, extend to plaintiffs' lands in channels well defined. The cases cited by counsel are not in point. It was held in those cases that water of mere surface drainage, occasioned by extraordinary courses, such as unusual heavy rains, may be turned by defendant, so as to prevent it from overflowing his lands, and he is not liable for damages, though the water by his act overflowed and damaged his neighbors' land. "If a channel formed by running water presents to the eye at a casual glance the unmistakable evidence of the frequent action of running water, then it is a watercourse." (Gould on Waters, sec. 264.) Kinney on Irrigation, sec. 44, cited by counsel, says: "At certain periods of the year, in the arid regions, the

water flows on the surface in a well-defined course, and
there is at all times what is known as underground flow.
These underground streams are probably much greater in
volume in some cases than the water upon the surface, and
are, as far as rights of appropriation or riparian rights are
concerned, but a valuable portion of a well-defined surface
stream." Kinney on Irrigation, sec. 48, cited by counsel,
says: "In and near the mountains many streams have a
bed, which was originally a rocky cañon, but has been
filled up. In this debris a large portion of all the water
sinks from sight to reappear when some rocky reef crosses
the channel and forces the water to the surface. The mov-
ing of this water through porous gravel, owing to the decliv-
ity of the stream, is often quite rapid, and a considerable
volume may thus pass down the channel hidden from sight.
Watercourses are divided into two classes—those whose
channels are known to be defined, and those unknown and
undefined. The word 'defined' means a contracted and
bounded channel, though the course of the stream may be
undefined by human knowledge, and the word 'known' refers
to knowledge of the course of the stream by reasonable infer-
ence." (*Black* v. *Ballymera Comrs.*, 17 L. R. Ir. 456; *Roach*
v. *Driscoll*, 20 Conn. 533; *Brown* v. *Illins*, 25 Conn. 594;
*Haldeman* v. *Burkhardt*, 45 Pa. St. 578.) In *Cross* v. *Kitts*,
69 Cal. 221, cited by counsel, the Court says: "Under-
ground water of a stream may be acquired by appropriation
and the appropriator cannot be divested of it by the wrong-
ful act of another." Kinney on Irrigation, 478–81, says:
"If water reaches a point by either percolating its way
through the soil or by subterranean channels, and at that
point is appropriated, the appropriator has the property in
it of which he cannot be divested by the owners of the soil
through which the water courses."

V. 28 Ency. Law, 994, says: "The test of the appro-
priation of water is the application thereof to the beneficial
use designed, and the method of diverting or carrying out
such design or making such application is immaterial," cit-
ing *Thomas* v. *Guirand*, 6 Colo. 533. 28 Ency. Law, 994:
"It is not necessary that the appropriator shall construct an
actual ditch in order to take possession of water. He may

avail himself of the economy of nature." Long on Irriga-
tion, sec. 49, says: "If land is rendered productive by the
natural overflow of the water thereon, without the aid of any
appliances whatever, the cultivation of the land by means of
water so naturally moistening it constitutes a valid appro-
priation of such water," citing *Thomas* v. *Guirand*, 6 Colo. 530.

VI.   The decree involves no error injurious to three of the
appellants.   If it involves error working injuriously to the
rights of the other appellants, they should have severed in
the assignment of it.   Assignments of error made jointly by
all the appellants as to matters which are available, if at all,
to some of them only, must be disregarded.   (*Kimbrell* v.
*Rodgers*, 90 Ala. 339; *Rudolph* v. *Brewer*, 96 Ala. 189).   A
reversal cannot be granted in a joint assignment of error
unless the error affects all the appellants joining thereon.
(*Bolt* v. *Ward*, (Ind.) 59 N. E. 1053 (1901); *Paskins, in re.*,
155 Ind. 173.)   It has been repeatedly held that a joint
assignment of errors by two or more persons, which is not
good as to all who joined therein, must be overruled as to all.
(*Shabata* v. *Johnston*, 73 N. W. (Neb.) 278; *Gordon* v. *Little*,
41 Neb. 250; *Harold* v. *Meline*, 45 Neb. 618; *Small* v. *Scandall*,
45 Neb. 306.)

VII.   When inadmissible evidence is received in a trial by
the court alone, it will be presumed on appeal that the court
did not consider it in making the findings.   (*Bowman* v.
*Sedgwick*, 82 N. W. (Iowa) 591; *Omaha Bk.* v. *Kiper*, 60 Neb.
34; *Ross* v. *Jones*, 58 S. C. 1; *Wells* v. *Davis*, 62 Pac. (Utah)
3; *Gage Co.* v. *Bridge Co.*, 58 Neb. 827; *Grumme* v. *Firmenich*,
110 Iowa, 505; *Smith* v. *Elrod*, 127 Ala. 269; *Lumney* v.
*Heeley*, 56 Neb. 313; *Merriman* v. *McCormack*, 101 Wis. 619;
*Miller* v. *Houston*, C. C. App. 55 Fed. 366; *Mining Co.* v.
*Taylor*, 100 U. S. 37; *Kelsey* v. *Crowther*, 7 Utah, 519;
*Chicago* v. *Turner*, 42 Kan. 341; *White* v. *White*, 82 Cal. 427;
*Frisk* v. *Reigelman*, 74 Wis. 499; *Scarborough* v. *Borders*, 118
Ala. 399; *Frank* v. *Napier*, 41 W. V. 481.)

VIII.   Where there is sufficient evidence to support the
findings, the admission, over objection, of incompetent evi-
dence, is harmless.   (*Phillips* v. *Haddock*, 163 Mass. 201;
*Galvin* v. *Palmer*, 113 Cal. 46; *Ohio Ry.* v. *Tabor*, 98 Ky. 503.)

IX.   The court was bound to decide against the defense of

the statute of limitations. (*Robinson* v. *Imperial*, 5 Nev. 78; *Missouri* v. *Elliott*, 102 Fed. 96; *Daniels* v. *Johnson*, 129 Cal. 415; *Podolski* v. *Stone*, 186 Ill. 540; *Martin* v. *Marks*, 154 Ind. 549; *Bowman* v. *Sedgwick*, 82 N. W. Iowa, 491.)

X. In causes tried by the court, the objection to illegal evidence is not tenable unless it is plainly apparent that the court rested its decision on it. (*Mitchell* v. *Beckman*, 64 Cal. 117, 123; *Sawyer* v. *Campbell*, 130 Ill. 186; *McCullough* v. *Phœnix*, 113 Mo. 606; *Bilby* v. *Townsend*, 29 Neb. 220; *Rodrigues* v. *Hayes*, 76 Tex. 225; *Salt Lake* v. *Mammoth*, 6 Utah, 315; *Eureka* v. *Stoteman*, 69 Wis. 398; *Duffy* v . *Hickey*, 68 Wis. 380; *Frisk* v. *Reigelman*, 75 Wis. 499; *Hooker* v. *Villiage Brandon*, 75 Wis. 8; *Farr* v. *Semple*, 81 Wis. 230; *Harbison's Estate*, 145 Pa. 456; *Simon* v. *Fagan*, 87 N. W. Neb. 21.)

XI. Defendants contend that the proceedings in a contempt case against Walsh is an estoppel in this case. In the case at bar Walsh does not claim under the deed from Toole, but dereigns his title, not from Toole, but from the original prior appropriators of the land and water, seventeen miles below said creek. No man is privy in estate with another unless he dereigns his title from that other. He is only privy as to the title acquired from the party that was sued. As to title derived from others not parties to the former suit, he cannot be privy. Walsh derived his title to the Cottonwood ranch from Toole, a party to the suit; therefore he was adjudged guilty of contempt. But in the suit at bar he derived his title from original prior appropriators of land and water seventeen miles below the Cottonwood ranch, which was not and could not be in question or investigated in the contempt proceeding. A title, derived by a person prior to the suit, cannot be privy, as to that title, to a party of the suit. (Freeman on Judgments, 4th ed. p. 453; *Cromwell* v. *Co. Sac.*, 94 U. S. 351; *Thrift* v. *Delaney*, 69 Cal. 188; *Bryan* v. *Halladay*, 93 Cal. 241.)

XII. In *Shea* v. *McNamara*, 54 Cal. 170, the Court says: "A judgment is an estoppel only as to parties and privies, and those only are privies whose interest in the subject matter of the suit originated subsequently to its commencement," citing Freeman on Judgments, sec. 162; *Campbell* v. *Hall*, 16 N. Y. 575; 2 Smith Leading cases, p. 825.) "A judgment is an

estoppel only as to parties and privies, and those only are privies whose interest in the subject matter of the suit originated subsequently to the commencement of the suit." (Freeman on Judgments, sec. 162; Bigelow, Estop. 74–81; Herman, Estop. sec. 46; 1 Greenleaf's Ev. 189; *Campbell* v. *Hall*, 16 N. Y. 575; *Horn* v. *Jones*, 28 Cal. 203; *Keokuk* v. *Missouri*, 154 U. S. 310–314 (14 Sup. Ct. 597); *Shea* v. *McNamara*, 54 Cal. 170; *Bryan* v. *Malloy*, N. C. 508; *Scates* v. *King*, 110 Ill. 456; *Dooley* v. *Potter*, 140 Mass. 49 (1 New Eng. 85); *Coles* v. *Allen*, 64 Ala. 98; *Chester* v. *Bakersfield*, 64 Cal. 42.)

XIII. Where a finding which points to judgment is supported by evidence, the fact that other findings are not supported by the evidence is immaterial, and is not ground for reversal. (*Wheat* v. *Bank*, 119 Cal. 4.) The finding is never disturbed where the evidence is conflicting. (*Barker* v. *Gould*, 122 Cal. 240; *Stockton* v. *Glens*, 121 Cal. 167; *Santa Monica* v. *Hege*, 119 Cal. 376; *Loftus* v. *Fisher*, 113 Cal. 286; *Citizen's Bank* v. *Los Angeles*, 121 Cal. 30; *Johnson* v. *Brown*, 115 Cal. 694, and many Nevada cases.) Wrong findings, or failure. to find, is immaterial where other findings sustain the judgment. (*Coyle* v. *Lamb*, 123 Cal. 264; *Gray* v. *Wells*, 118 Cal. 11.)

XIV. The defendants could not hide themselves behind the statute of limitations, for the plaintiffs never were deprived of their water for five successive years, nor were the defendants ever in uninterrupted possession of the water for five successive years. *Authors* v. *Bryant*, 22 Nev. 242, says: "In order to establish a right by *prescription* to the use of water claimed by another, the use must have been uninterrupted, adverse and under a claim of right, and with the knowledge of the owner." Adverse possession must be continuous and uninterrupted for five years. (*Alta* v. *Hancock*, 85 Cal. 219; Wood, Statute Limitations, sec. 269.)

XV. "It is only when the water in the river becomes insufficient to supply all the appropriators that the use of water belonging to another is adverse. We nowhere find in the evidence that the defendant Estrada had been in the uninterrupted adverse use of the water as against the right of plaintiff for five consecutive years." (*Egan* v. *Estrada*, 56 Ariz. 721.)

XVI.   Appellants contend that the decree is void for uncertainty, because, instead of distributing the water by inches, it takes as the basis a quantity necessary to irrigate by acres. (*Dick* v. *Bird*, 14 Nev. 163.)   Judgment affirmed.   (*Dick* v. *Caldwell*, 14 Nev. 167.)   This court always sustained judgments for quantity of water sufficient to irrigate certain numbers of acres.   Thus, in *Roeder* v. *Stein*, 23 Nev. 95, the court found that the plaintiff had the first right to enough water to irrigate one hundred and twenty-five acres.   Judgment affirmed.

XVII.   Counsel contend that the decree should have determined the measure of water to which each of the defendants is entitled.   There was no such objection made, and none appears in record, and there is no such specification.   But, no matter, it is no concern of the plaintiffs; "they are not concerned in settling the relative priorities between the defendants, whose rights are junior to plaintiffs'.   That is a matter which the defendants must settle between themselves." ·(*Lower Latham Ditch Co.* v. *Louder Irrig. Co.*, 60 Pac. Cal. 629.)

*P. M. Bowler, Jr.*, and *Bigelow & Dorsey*, for Appellants, in reply:

I.   No watercourse, surface or subterranean, is established by the evidence, from the points of diversion by the defendants, over, through and across the lands of plaintiffs.   There is no connection or identity of the water appropriated by the defendants and that claimed by the plaintiffs.

II.   The burden of proving that waters moving in the ground are flowing in a natural watercourse, or in a defined channel, or are a part of a stream, is upon the plaintiff in this action.   The presumption is that they are not part of a stream or watercourse, nor flowing in a definite channel. (*Lux* v. *Haggin*, 69 Cal. 225-418; *Los Angeles* v. *Pomeroy*, *infra*; Kinney on Irrig., sec. 48; *Hansen* v. *McCue*, 42 Cal. 508; *Tampa W. W. Co.* v. *Cline*, 5 Am. St. Rep. 262; *Ocean Grove* v. *Asbury Park*, 40 N. J. Eq. 447.)

*Bigelow & Dorsey* and *P. M. Bowler, Jr.*, for Appellants, in closing:

I.   The objections of the respondents to the statement on

motion for a new trial, and their motion to disregard and to strike out the same on the ground that it was not filed on time, are without foundation, and should be overruled. The statement was filed and served in time. At page 8 counsel for the respondents say: "There was a stipulation filed on the 12th of March, 1900, that all proceedings be stayed until the 30th day of November, 1900, and that, within forty days thereafter, the defendant make application for additional findings of fact, and prepare, file and serve notice of intention to move for a new trial, and prepare, file and serve their statement in support of motion for new trial." Within the terms of, and the time limited by, the stipulation referred to in the above quotation, the statement on motion for a new trial was filed and served in time. In line we quote from Cutting's Compiled Laws of Nevada, sec. 2620 (Stats. 1861, p. 6, sec. 10), as follows: "An attorney and counselor shall have authority: First—To bind his client in any of the steps of an action or proceeding, by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise." A party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved; and, having once done so, he cannot subsequently invoke its protection. (*Sentenis* v. *Ladew*, 140 N. Y. 463; s. c. 35 N. E. R. 650; *Blomberg* v. *Stewart*, 67 Wis. 455-7-8; s. c. 30 N. E. R. 617-8; *Burt* v. *Oneida Com.*, 59 Hun, 234; *Smith* v. *Smith*, 119 N. C. 311-13; s. c. 25 S. E. R. 877; 20 Ency. Pl. & Pr. 607, and cases cited in note 7.) In *O'Neale* v. *Cleaveland*, 3 Nev. 485, in construing a stipulation with regard to taking of testimony, the Court said (page 497): "Such stipulations should always receive a fair and liberal construction, so as to carry out the apparent intentions of the parties and promote fair trials on the merits, rather than a narrow, contracted, technical interpretation calculated to take parties by surprise and defeat the ends of justice." There is nothing in the stipulation compelling the defendants to perform all or any one of the acts mentioned in the stipulation, only within the period therein fixed—within forty days after November 30, 1900.

II. The amendment to Section 182 of the practice act by the act of March 6, 1893 (Stats. 1893, p. 116), by necessary implication repealed the act of March 11, 1865 (Stats. 1865, p. 394), so that no implied findings are now permissible in this state. The court must now make express findings of fact upon all the material issues raised by the pleadings.

III. If findings of fact are imperatively required upon every material issue raised by the pleadings, it follows that a failure to find upon any one issue, which, if found against the prevailing party, will render the decision against law, and entitle the losing party to a new trial, when, in his notice of intention, he designates as a ground of motion for a new trial, that the decision is against law. (*Knight* v. *Roche*, 56 Cal. 15, 18, 25, see p. 17; *Brison* v. *Brison*, 90 Cal. 323, 338; *Haight* v. *Tryon*, 112 Cal. 4, 6; *Spotts* v. *Henley*, 85 Cal. 168; *Adams* v. *Helving*, 107 Cal. 298, 301.)

ON PETITION FOR REHEARING.

*Henry Mayenbaum* and *J. B. Egan*, for Petitioner:

I. In the fall of 1862, and spring of 1863, and long prior to any claim of defendants to any of the waters of Reese river, the plaintiffs located their lands on Reese river, and made fences around the lands. The water of Reese river then, and ever since, naturally overflowed and overspread on said land, and had done so, from time immemorial, and made the land meadow, grass and pasture land. The only value of said land is and always was the water so overflowing it. Without said water the land is utterly valueless, and no grass or anything else could grow thereon. The water is the very substance of the estate the plaintiffs had in said land. The land so overflowed was and is of great value. The plaintiffs made great and expensive improvements thereon. They and their families had their homes there ever since. Now, it is contended that, because the plaintiffs did not divert the water by ditches, therefore they had no right which the law would respect, and the defendant's had the right to despoil the plaintiffs of their right of the property they possessed for forty years. They are told in effect that they must abandon their ranches and homes because the defendants, after all these years, diverted the water by ditches.

II.   The water is appurtenant to the land, and it can no more be taken away than the soil itself.   It is necessary to the soil to make it productive.   No subsequent appropriator, nay, not even a riparian proprietor, can take it away or divert it, as against a prior right, acquired by necessary use of it on the land.   (2 Washburn, Real Prop. pp. 368-9; Kinney on Irrigation, sec. 267; *Crooker* v. *Benton*, 93 Cal. 365; Rapalje & Lawrence Law Dic. "Appurtenant.")

III.   The possession of the land, with the appurtenant water permeating all through the soil, and necessary to the land, and which cannot be taken away without despoiling the meadow and make it unproductive, is alone sufficient to maintain their right to such possession as against all others who seek to divert the water, and especially those who base their right to do so on subsequent appropriation or diversion. (*Reno Water Co.* v. *Leete*, 17 Nev. 203-208; *Scorpion S. M. Co.* v. *Marsano*, 10 Nev. 370; *Barnes* v. *Sabron*, 10 Nev. 240.)

IV.   The intent of the respondents is apparent by "their acts, by taking and holding the possession of the land and water spread thereon, and by means thereof raising valuable crops, pasturing their horses and cattle, etc., for a great many years."   As Kinney on Irrigation, sec. 150, says:   "Appropriation of water is thus defined.   Appropriation of waters is the intent to take by some open physical demonstration of the intent and for some valuable use.   The intent of the respondents was apparent by everyday physical demonstration of their intent, for forty years, by taking and holding possession of the land and of the water spread thereon and permeating through it, and by means thereof harvesting valuable crops, pasturing their cattle and horses, etc."

V.   The Court, in *Thomas* v. *Giraud, et al.*, 6 Colo. 533, says:   "If land be rendered productive by the natural overflow of the water thereon, without the aid of any appliances whatever, the cultivation of such land, by means of the water so naturally moistening the same, is a sufficient appropriation of such water.   The true test of appropriation of water is the successful application thereof to the beneficial use, and the method of diverting or carrying the same or making such application is immaterial."

VI.   A person who marks off the boundaries of land, and

uses the same for pasturage, and excludes others from the land adopted for pasturage, is as much in actual possession of the land as though he had enclosed it. (*Sheldon* v. *Mull*, 67 Cal. 301; *Courtney* v. *Turner*, 12 Nev. 345.) Kinney on Irrigation, sec. 152, says: "The true test as to whether the water can be held or not, is whether the same has been or is about to be applied to some beneficial purpose, but the method of making such application is not material."

VII. Long on Irrigation, sec. 42, says: "The mode of diverting and conducting the water is wholly immaterial, and the irrigator may employ any means best suited to the existing physical conditions, and all the circumstances of the case."

VIII. It is said in the opinion that the decree is not certain and definite, and that the decree must determine, in terms, the measure of water the defendants had to any of the Reese river water that remained after the plaintiffs got what the decree specifies. It does not appear that there was any water remaining after the plaintiffs were supplied. Nor does it appear that, if any water were remaining, how much it was. None of the cases cited in the opinion hold that the court must find or determine the rights of the defendants as to the water that may remain, except perhaps in those states, where the statute requires it must be done. But it is no concern of the plaintiffs, and, as the Court said in *Lower Latham Ditch Co.* v. *Lauden Irrig. Co.*, 27 Colo. 267: "The plaintiffs are not concerned in settling the relative priorities between the defendants, whose rights are junior."

IX. *Saint* v. *Guerrero*, 17 Colo. 448, says: The plaintiff who has the prior right to the water "may bring and maintain an action jointly against all parties junior in right to himself, whenever the result of their acts, either joint or several, deprives him of his better right to the use of the water, or substantially interferes therewith. He may thus secure protection to his own priority, and leave the several junior appropriators to settle their relative priorities among themselves." It is enough for the plaintiffs to attend to their side of the case. The defendants must attend to their side. The defendants never asked the court to parcel out

to them the water remaining over the amount decreed to plaintiffs.

X. A complete answer, then, to the contention that the court should have apportioned the remaining water to defendants, is that that would be entirely for the benefit of the defendants, and, by not asking this to be done, they waived it. A party may thus waive any right whatever, even a statutory, aye, even a constitutional right. (Sedgwick, Stat. and Constitutional Laws, 111; Cooley's Const. Lim. 181; *Robinson* v. *Bidwell*, 22 Cal. 388.)

XI. The decree certainly did determine the rights of the plaintiffs. It determined that they had the right to sufficient water to irrigate a certain number of acres, and enjoined the defendants from diverting the same.

XII. So, in *Roeder* v. *Stein*, 23 Nev. 95, the "decree was that the plaintiff had the first right to enough water to irrigate 125 acres, the quantity of water awarded was measured by the number of acres. This court affirmed the order refusing a new trial." Many cases are in the Nevada Reports in which the water was measured by acres. In *Holeman* v. *Pleasant Grove Co.*, 8 Utah, 78, cited in the opinion, the court says: "The decree allowed plaintiff enough water to irrigate his sixty acres of land. It may be difficult to determine how much water is required to irrigate an acre, but it can be sufficiently approximated." Decree affirmed.

XIII. The supreme court of this state, having for so long a period of time fully determined that a decree measuring water by the number of acres is proper, the enlightened judges of this court will not now consider this question open for discussion, but will adhere to those decisions upon the wholesome maxim of *stare decisis et non quieta movere.* When a principle has once become recognized as a rule of property, it should not be changed except by the legislature. (*Lemp* v. *Hastings*, 4 Greene Iowa, 449; *Grignon's Lessee* v. *Astor*, 2 How. U. S. 343; *Sydner* v. *Gascoigne*, 11 Tex. 455; *Ewing* v. *Ewing*, 24 Ind. 470; *Reed* v. *Ownby*, 44 Mo. 206; *Fisher* v. *Iron Co.*, 10 Wis. 355; *Van Winkle* v. *Constantine*, 10 N. Y. 425; *Leavenworth* v. *Miller*, 7 Kan. 479; *Evans* v. *Job*, 8 Nev. 344; *Barstow* v. *Union Con.*, 10 Nev. 386; *O. F. Bank*

v. *Quillen,* 11 Nev. 109.)    The necessity of this doctrine of *stare decisis* all courts recognize.    I cite a few cases from the decisions of the United States Supreme Court, the greatest and most powerful of all the courts in the world:    *Patten* v. *Eaton,* 1 Wheat. 476;    *Thatcher* v. *Powell,* 6 Wheat. 119;    *Elmendorf* v. *Taylor,* 10 Wheat. 152;    *Shelby* v. *Guy,* 11 Wheat. 361;    *Jackson* v. *Chew,* 12 Wheat. 153;    *Ross* v. *Borland,* 1 Pet. 655;    *Gardner* v. *Collins,* 2 Pet. 58;    *Bank* v. *Dudley,* 2 Pet. 492;    *Powell* v. *Harmon,* 2 Pet. 241;    *McCluny* v. *Silliman,* 3 Pet. 277;    *U. S.* v. *Morrison,* 4 Pet. 124;    *Henderson* v. *Griffin,* 5 Pet. 151;    *Green* v. *Neil,* 6 Pet. 291;    *Massingil* v. *Downs,* 7 How. 767;    *Nesmith* v. *Sheldon,* 7 How. 812;    *Luther* v. *Borden,* 7 How. 1;    *Smith* v. *Kernochan,* 7 How. 198;    *Smith* v. *Hunter,* 7 How. 738;    *Van Renseler* v. *Kirney,* 11 How. 297;    *Webster* v. *Cooper,* 14 How. 503;    *Jefferson Bank* v. *Skelly,* 1 Black. 436;    *Sumner* v. *Hicks,* 2 Black. 533;    *Leffingwell* v. *Warren,* 2 Black. 599;    *Lane Co.* v. *Oregon,* 7 Wall. 71;    *Christie* v. *Pridgeon,* 4 Wall. 197;    *Nicholls* v. *Levy,* 5 Wall. 433;    *Richmond* v. *Smith,* 15 Wall. 429;    *Walker* v. *Harbor Comrs.,* 17 Wall. 650;    *Tioga R. R. Co.* v. *Blossburg R. R.,* 20 Wall. 138;    *State R. R. Tax Cases,* 92 U. S. 576;    *South Ottowa* v. *Perkins,* 94 U. S. 260;    *Town of Scipio* v. *Wright,* 101 U. S. 665.

By the Court, MASSEY, C. J.:

The preliminary motion to strike out the statement, interposed by respondents in the district court and renewed in this court, involves the construction of a stipulation between the parties entered into on the day the findings were filed and the judgment rendered.

The stipulation, *inter alia,* provides that all proceedings in the action shall be stayed until the 30th day of November, 1900, and that within forty days thereafter the appellants may make application for additional findings, file and serve notice of intention to move for a new trial, and file and serve the statement on motion for a new trial.

The notice of intention was filed and served on the 26th day of October, 1900, and the proposed statement on motion for new trial was filed and served on the 5th day of January, 1901.

It is claimed by the respondents that, while under the stipulation, the notice of intention may be filed at any time before the expiration of the forty days, the relative time for filing the statement on motion for a new trial provided by the civil practice act (Comp. Laws, 3292), after the filing of the notice of intention, was not changed by the stipulation, and therefore, the statement not having been filed within five days after filing and serving the notice of intention, it should be disregarded and stricken out.

It is a general rule that stipulations between parties should receive a fair and liberal construction, in harmony with the apparent intention of the parties and the spirit of justice, and in the furtherance of fair trials upon the merits, rather than a narrow and technical one, calculated to defeat the purposes of their execution, and, in all cases of doubt, that construction should be adopted which is favorable to the party in whose favor it is made. ( *O'Neale* v. *Cleaveland*, 3 Nev. 485; *Insurance Co.* v. *Harris*, 97 U. S. 331; *Sweeney* v. *Railway Co.*, 11 Mont. 523; 20 Enc. Pl. & Prac. 657, *et seq.*)

Under this rule it is clear to us that the construction contended for by respondents is too narrow and technical. The appellants were not bound to perform any one or all of the acts covered by the stipulation at any specified time. They could, we believe, under a liberal construction in the order named, perform any or all of the acts at any date within the time limited. To hold as contended by respondents would, it seems to us, necessitate the interpolation of language not found in the stipulation; and, if such had been the intention of the parties, it was useless and absurd to have included in the stipulation any matter relating to the time of filing and serving the statement on motion for a new trial. The intention of the parties, manifest from the language used, was that the stipulation should stand in lieu of the provisions of the statute regulating these matters.

The case of *State* v. *Cheney*, 24 Nev. 222, cited by respondents in support of their contention, is not in point, and the reading of the facts of that case is sufficient to distinguish it from the case at bar, without discussion.

The motion to strike out will therefore be denied.

The respondents brought this action against appellants for

the restitution of the waters of Reese river, and to restrain and enjoin them from diverting any of the waters thereof, and from preventing the usual natural flow of the waters thereof, or any portion thereof, from flowing to the lands of respondents. The complaint also contains a general prayer for equitable relief.

Omitting all formal parts of the complaint, the matters pertinent to the question considered on this appeal, as alleged, are that the respondent Walsh and his predecessors in interest were, and had been since the 15th day of March, 1863, the owners and in the possession of certain tracts of land containing 1,400 acres; that the respondent A. P. Maestretti and his predecessors in interest were, and had been since said date, the owners and in possession of certain tracts of land containing 480 acres; that the respondents James and Margaret Ryan and their predecessors in interest were, and had been since said date, the owners and in the possession of certain tracts of land containing 400 acres; that the respondent L. F. Maestretti and his predecessors in interest were, and had been since said date, the owners and in the possession of certain tracts of land containing 800 acres; that the respondent Mrs. Bircham and her predecessors in interest were, and had been since said date, the owners and in possession of certain tracts of land containing 400 acres—all of which lands are situated upon Reese river, Lander county, Nevada; that said lands have been used during all said times for agricultural purposes; that Reese river has from time immemorial, until the diversions by the appellants in 1897, flowed over, through, and across said lands; that from the 15th day of March, 1863, until the diversions made by appellants aforesaid, respondents and their predecessors in interest appropriated and used the waters of the river for irrigating and flowing over and through said lands, thereby raising crops of grass, hay, and vegetables; that the appellants claim and assert rights to the waters of the river, which claims and assertions are alleged to be subordinate and subject to the rights of the respondents; that the diversions of the water by appellants since 1897 have been wrongful; and that appellants threaten to continue the same.

The answer denied the material averments; set up prior

rights to all the water of Reese river by appropriation, and other matters not material to the questions considered and determined on this appeal. The findings and decisions were for the respondents. A motion for a new trial was interposed and denied, and this appeal is taken from the order denying the motion.

The court found, among other matters, that Reese river had from time immemorial, and until the diversions by appellants, flowed over, through, and across the lands of respondents; that on the 15th day of March, 1863, the respondents and their predecessors in interest had appropriated and used the waters of Reese river "in sufficient quantity" for irrigating and flowing over part of their land. The court did not find the quantity of water appropriated by any or all of the respondents, or that respondents had appropriated all the waters of the river. The decision followed the findings, and a decree was entered perpetually enjoining the appellants, and each of them, their agents, etc., "from diverting any of the water of Reese river, and from in any way interfering with said water in such manner as to prevent said water from flowing on the lands of respondents in sufficient quantity to irrigate the same."

From a large mass of matter contained in a voluminous record we glean the following established facts, which appear not to be controverted, and which must control the questions which are clearly presented under a part of the assignments considered by the court:

Reese river has its source in the mountains of Nye county, and flows northerly into Lander county. The lands mentioned in this proceeding lie along, upon, or in the vicinity of said river. The quantity of water flowing in the river is variable, dependent upon the amount of snow and rain falling upon its watershed at its head and along its course, and the watersheds of its tributaries, during the various seasons.

The evidence does not show the quantity of water usually flowing in this stream, further than at some periods there was sufficient for all the parties claiming rights thereto in this proceeding, and at other times the quantity was insufficient to meet the claims of all.

Several miles above respondents' lands the river divides

into two forks, called the East and West Forks. The respondents' lands lie along or upon the East and West Forks of the river, and the lands of the appellants are several miles south and above the lands of respondents, and along the channel of the river above and near where it divides into two forks.

The appellants and their predecessors in interest settled upon the lands mentioned in their complaint in 1862 and 1863. The predecessors in interest of some of the respondents settled on lands along the river a little later, but about the same time that the lands of appellants were settled. The settlers upon the lands claimed by respondents had their several holdings surveyed, marked the boundaries thereof, and protected the same to some extent by making so-called ditch fences.

The ditches thus made were not for the purpose of irrigation, and were not so used for many years after and until other rights of both respondents and appellants had been acquired to the waters. The settlers upon respondents' land found wild grasses growing thereon at the time of their settlement, suitable for hay and grazing, and cut and grazed the same for a number of years. Up to 1869 whatever hay and grass grew upon these lands was produced by the natural overflow of the waters of Reese river, and waters flowing from springs upon part of the holdings.

No attempt was made to divert any of the waters of Reese river for the purpose of irrigation until 1869, when the ditch marked on respondents' map by the figures 1, 2, and 3, taken from the so-called West Fork, above the lands now held by Ryan and Maestretti, was commenced. This ditch was not completed until many years after its commencement, and it appears from the evidence that no water has run through a part of this ditch since 1891.

As to the Walsh lands, it appears from the testimony of the respondent, Walsh, that no diversions were either made or attempted until 1870, and that the diversions made for the purposes of irrigating his lands cover the period from 1870 to 1884. It is shown by his testimony that he helped make the ditch marked "E to F" on respondents' map in 1870; the ditch marked "J to K" on the same map, it appears, was

commenced and made about the same time; the ditch marked
on the same map "L to N" was commenced in 1874 or 1875;
and the ditch marked "G to H" was made in 1884; and,
according to his statement, the last named ditch was made
principally for the purpose of drainage, and used afterwards
for the purpose of drainage and irrigation.

It nowhere appears in the testimony what the size of any
one of these ditches was, or what is or was the carrying
capacity of any one.

As to diversions of water for the purpose of irrigating the
Ryan and Maestretti land, other than the attempted diver-
sion by the ditch marked "1, 2, and 3," above referred to, it
appears that a dam at a point marked "7" on the map was
constructed in 1869, and a ditch taken from the dam to a
point marked "8" thereafter.

It also appears that some dams were also placed in what is
called the "Sampson Slough," running through these lands.
It also appears that in the 70's one part of the ditch made
to mark the boundary of the west line of the Ryan place was
used to irrigate part of the land.

The facts regarding the first diversion of water for the
purpose of irrigating the Maestretti land, formerly held by
Bircham and Wallace, is of the most meager character.

It appears that S. B. Wallace, the former owner of this
tract, after he and Bircham had divided their holdings, in
1869, constructed two dams and turned water onto his meadow
land, but it is uncertain whether this water had its source in
the river or in certain springs. The date of the first diver-
sion upon the Bircham land is left by the evidence to be con-
jectured.

Some time between 1863 and 1869 it appears that a dam
was constructed in the so-called West Fork of Reese river,
above the Bircham house.

Whether the diversion so made was continued or abandoned
is a matter, also, of doubt, as it appears from the testimony
of the witness Campbell that, for a period of twenty years or
more before the trial of this action, water to irrigate the
Bircham land was diverted by a dam in the river about twelve
miles above the Bircham ranch.

It is not necessary to fully state the facts as to the diver-

sions made by the various appellants, but only such facts as illustrate the question discussed and decided need be stated. The appellant Daniel T. Wallace purchased the so-called McQuitty place, above respondents' lands, in 1870, and by means of dams and ditches diverted water for irrigation. Whether these dams and ditches had been made and so used before his purchase of the land is uncertain.

In 1873 Wallace located another ranch higher up on the river, and started to construct a ditch for the purpose of irrigating this ranch. In 1877 he transferred his diversion of water, under the advice of counsel, from the McQuitty place to his upper ranch, as it appears that the amount of water used on the McQuitty ranch would irrigate much more land upon the upper ranch.

Fred Ahlers, whose administrator is one of the appellants, settled upon Reese river in 1864, and commenced farming that year. He made diversions of the water of the river for the purpose of irrigation, but the dates of such diversions and the amounts of water so diverted are not shown by the testimony. The appellants Charles Ahlers and Hess claim rights through Fred Ahlers, deceased. McMahon started farming on Reese river in 1864, and that year put under cultivation eight acres, but the dates and amounts of diversions made by him are not shown by the testimony.

The above facts are sufficient, as above stated, to illustrate the question considered and determined by this court, and furnish a sufficient basis for its conclusion. It is well to note here that the record does not disclose the quantity of water diverted at any time, by any means, by any one or all of the parties to this action. Neither does it show the quantity sufficient or necessary to irrigate the lands, or any part of the lands, of respondents, as found by the court. Neither is there any showing in the record from which these facts, or any one of these facts, could be ascertained by any known process.

Counsel, under the many assignments made, have discussed in their briefs nearly the entire subject-matter of the law of irrigation prevailing in the arid and semi-arid states; but, as we view the matter, it is necessary to consider only such questions as are plainly and sharply made under the assign-

ment that the findings and decision of the court are contrary to, and not supported by, the evidence, and contrary to law. The other questions, for various reasons appearing in the record, the presentation of which would unnecessarily lengthen this opinion, have been considered, but will not be determined.

It is evident from the facts recited that the finding of the court fixing the date of the appropriation of respondents on the 15th day of March, 1863, is contrary to both the law and the evidence.

This conclusion involves directly the question as to what constitutes an appropriation of water, as used in the decisions of this court and the laws of this state as they have existed and now exist.

Under two rules of the law may rights to use of water flowing in a natural stream be acquired—under the rule of riparian rights and under the rule of appropriation.

It is conceded by counsel in this action, and it has been held by this court, that the doctrine of riparian rights is so unsuited to the conditions existing in the State of Nevada, and is so repugnant in its operation to the doctrine of appropriation, that it is not a part of the law, and does not prevail here.

In order, therefore, to constitute a valid appropriation of water, within the meaning of that term as understood by the decisions of this court and the laws of the state, and, as we believe, by the decisions of the courts and laws of other states in the arid region, there must be an actual diversion of the same, with intent to apply it to a beneficial use, followed by an application to such use within a reasonable time. (*McDonald* v. *Bear River Mining Co.*, 13 Cal. 220; *Larimer Co. R. Co.* v. *People*, 8 Colo. 614; *Fort Morgan Land & Canal Co.* v. *South Platte Ditch Co.*, 18 Colo. 1; *Lowe* v. *Rizor*, 25 Or. 551; *Nevada Ditch Co.* v. *Bennett*, 30 Or. 59; *Offield* v. *Ish*, 21 Wash. 277; *Reservoir Co.* v. *Southworth*, (Colo.) 21 Pac. 1030; *Simmons* v. *Winters*, (Or.) 27 Pac. 7; *Charnock* v. *Higuerra*, 111 Cal. 473.)

While this court has never been required in its decisions to thus formally state the rule, yet an examination of the various cases which have been before it, and the large number of legislative acts, state and territorial, shows an actual diversion

of water to be one of the essential elements of an appropriation, within the meaning of that term.

Under the rule announced above, the rights of the respondents to the use of the waters of Reese river did not have their inception on the 15th day of March, 1863. Their rights were not initiated by settlement upon the land, by having the same surveyed, or by marking the boundaries thereof. No actual diversion was made on that date, or attempted on that date, and for a period of several years after, as appears from the facts stated. Cutting wild grass produced by the overflow of the river, or, as expressed by the witnesses, by the water of Reese river coming down and spreading over the land, was not an appropriation of that water, within the meaning of that term.

Neither was the grazing of the land an appropriation of the water, under the facts. The established facts as to the use of the waters of the river by respondents from 1863 to 1869, under the averments of paragraphs 14 and 15, as to the flowing of Reese river, and its appropriation and use, is the mere assertion and proof of riparian rights, if anything; and all parties concede that that rule does not prevail in Nevada.

If these facts should be held to constitute a valid appropriation of water, within the meaning of that term, then, under the contention of counsel that Reese river is a well-defined stream, with banks, bed, and channel, flowing over, through and upon respondents' land, would the channel have to run full of water before respondents could obtain the quantity of their appropriation, and before subsequent appropriators could acquire rights thereto, thus entailing a wasteful use of that which is so essential and necessary to the welfare and development of the state.

This leads up to another important question presented by the assignments, involving the award of the injunction under the findings and facts.

It appears that the inception of the rights of the respondents to the waters of the Reese river was not of the same date, but at different dates.

It appears that the rights of the respondent Walsh and the appellant Wallace were initiated at or about the same time. The first diversion by Walsh was made by his prede-

cessor, Crowley, in 1870. Other diversions made by himself and Crowley after his purchase of Crowley's rights, if he purchased those rights, were made at intervals from 1870 to 1884.

As early as 1870 the appellant D. T. Wallace appropriated water from Reese river on the McQuitty place, if McQuitty had not made the appropriation before Wallace became his vendee.

In 1873 Wallace made a further appropriation on his upper place, and at a subsequent date transferred his diversion from the McQuitty ranch to the upper ranch.

Under the settled rule of the law, it is not claimed by respondents that this transfer by Wallace was not authorized and proper.

Without further reference to the facts of the case, it will be seen that in part, and to some extent, the rights of the respondent Walsh and the appellant Wallace were initiated at the same time, and that the claim of priority as between them, so far as this record shows, could not be maintained by either.

The facts as to the appropriation of waters made by other respondents and appellants are not the same, in many respects, as those recited in reference to the appropriations made by Walsh and Wallace; but the above sufficiently illustrates the conclusion that the findings of the court as to the priority of rights, and its decision thereon, are contrary to both the law and the evidence.

Again, conceding, for the purpose of the argument, that the findings and decision of the court as to the priority of right of the respondents are supported by the evidence and the law, such findings are not sufficient to base a decision and decree of the court.

This is an equitable action to determine conflicting claims of right to the use of water by appropriation.

The respondents did not claim by their complaint that they had appropriated all the waters of the river, and the court did not find, expressly or impliedly, that they had.

It did find that they had appropriated sufficient water to irrigate certain portions of their land—much less than they claimed in their complaint.

The appellants asserted by their answer rights to the water by appropriation, and denied the rights of the respondents. If respondents' rights were prior, whatever surplus water flowed in the stream after they had taken the quantity to which they were entitled became subject to appropriation, under the decisions of this court.

It is conclusively shown, and not denied, that for many years appellants and their predecessors in interest have done all those things necessary under the law to constitute a valid appropriation of whatever surplus might remain after respondents had taken the amount to which they were entitled.

All the parties, under the pleadings and proof, were claiming and asserting rights to the use of the water of Reese river by appropriation; and all had acquired rights therein, and were asking that those rights be determined.

The court, by its findings and decision, determined but one issue. It did not determine all the rights of either of the respondents, or any of the rights of the appellants. It left undetermined the quantity of water sufficient to irrigate respondents' lands, and to that extent it left undetermined respondents' rights, and thereby all the rights of the appellants. It cannot be ascertained from the findings or the decision when the respondents have taken the quantity of water sufficient to irrigate their land, or whether respondents can take subordinate to appellants' rights at any time any of the waters by virtue of their appropriation.

So far as the findings, express or implied, are concerned, based upon the pleadings and the evidence, the quantity appropriated is left to mere conjecture—is left to be determined by future litigation between the parties.

The parties have no right to determine what is sufficient or what is not sufficient to irrigate their land.

The judgment and decree in this respect should be certain and definite, and, unless the decree is certain and definite in this respect, it cannot be upheld, except, under the circumstances of the case, the indefinite and uncertain quantity given by the decree is capable of ascertainment. (*In re. Huntley*, 29 C. C. A. 468; 85 Fed. 889; *Dougherty* v. *Haggin*, 56 Cal. 522; *Barrows* v. *Fox*, 98 Cal. 63; *Ditch Co.* v. *Crane*, 80 Cal. 181; *Riverside Water Co.* v. *Sargent*, 112 Cal. 230;

*Wallace* v. *Ditch Co.*, 130 Cal. 578; *Drake* v. *Earhart*, 2 Idaho, 716; *Johnson* v. *Bielenberg,*. 14 Mont. 56; *Smith* v. *Phillips*, 6 Utah, 376; *Holman* v. *Pleasant Grove City*, 8 Utah, 78; *Irrigation Co.* v. *Jenkins*, 8 Utah, 369; *Irrigation Co.* v. *Vickers*, 15 Utah, 374; *Authors* v. *Bryant*, 22 Nev. 245.)

A decree should be based upon definite findings, and the findings can be no more definite or certain than the evidence justifies; and where, as in the case at bar (an equitable action to determine conflicting claims of right to the use of water, with the parties before the court), there is nothing whatever in the record upon which to base findings or decision of those rights, either expressly or impliedly, and the findings and decision leave a material part of the controversy undetermined, or to be determined by piecemeal by future litigation, the action of the court in leaving undetermined essential rights of all the parties cannot be upheld, and is contrary to law. (*Watson* v. *Sutro*, 86 Cal. 500; *People* v. *Gold Run Mining Co.*, 66 Cal. 155; *Quint* v. *McMullin*, 103 Cal. 381; *Frey* v. *Lowden*, 70 Cal. 550; *Feeney* v. *Chester*, (Idaho) 63 Pac. 192.)

For the reasons given, the order denying the motion for a new trial will be reversed, and the cause remanded for further action in accordance herewith.

BELKNAP, J: I concur.

FITZGERALD, J., being disqualified, did not participate.