# SUPREME COURT

OF THE

## STATE OF NEVADA.

---

## APRIL TERM, 1885.

---

[No. 1081.]

## JOSEPH JONES, APPELLANT, *v.* JOHN Q. ADAMS, RESPONDENT.

IMPLIED FINDINGS—PRESUMPTIONS IN FAVOR OF.—When the evidence in a case is not presented to the appellate court for review, every material fact, not found, must be presumed in favor of the judgment.

RIPARIAN RIGHTS—COMMON LAW—REASONABLE USE OF WATER FOR IRRIGATION.—Under the principles of the common law, riparian proprietors had the right to a reasonable use of the waters of a stream running through their respective lands for the purposes of irrigation.

IDEM—COMMON LAW NOT APPLICABLE—PRIOR APPROPRIATION.—Prior to the passage of the act of Congress of July 26, 1866, the doctrines of the common law, declaratory of the rights of riparian proprietors respecting the use of running waters, was held to be inapplicable—except to a limited extent—to the wants and necessities of the people of the Pacific coast states and territories, and the courts decided that prior appropriations gave the better right to the use of the running waters to the extent, in quantity and quality, necessary for the uses to which the waters were applied.

Idem — Effect of Act of Congress of July 26, 1866. — *Held*, that the ninth section of the act of Congress confirmed to the owners of water rights on the public lands of the United States the same rights which they held under the local customs, laws, and decisions of the courts prior to its enactment; that the act did not introduce any new system or any new or different policy upon the part of the general government, and that it recognized, sanctioned, protected, and confirmed the system already established and provided for its continuance. (*Vansickle* v. *Haines,* 7 Nev. 249, overruled.)

Appeal from the District Court of the Second Judicial District, Douglas County.

The facts are stated in the opinion.

*N. Soderberg,* for Appellant:

I. Every riparian owner is entitled to a stream of water flowing through his land, without diminution or alteration. (Ang. on Wat. C., secs. 95, 120, 121, 123, 129, and notes; Godd. on Ease. 56; Wash. on Ease. 231; Phear on Water Rights, 24; *Ingraham* v. *Hutchinson,* 2 Conn. 584; *Dickinson* v. *Grand Junction C. Co.,* 7 Exch. 282, 292, 300; *Chasemore* v. *Richards,* 7 H. L. Cas. 349.)

II. A riparian owner to whom the water first comes in its flow has the right to use it for domestic purposes and for watering his cattle, but he has no right to so obstruct or divert the stream as to prevent the running of water substantially as in a state of nature it was accustomed to run. The maxim of the law which he is bound to respect, while availing himself of this right, is, *Sic utere tuo ut alienum non lædas.* (3 Kent Com. 440; Ang. on Wat. C., sec. 195; *Tyler* v. *Wilkinson,* 4 Mason, 400; *Ferrea* v. *Knipe,* 28 Cal. 341;[1] *Creighton* v. *Evans,* 53 Cal. 56.)

III. Jones, as the owner in fee of 360 acres of land, for which a United States patent was issued in 1865, and through which Sierra Creek naturally flows, is the owner by riparian right of all the waters of the stream as incident to the land. This question is *res adjudicata* in Nevada. (*Vansickle* v. *Haines,* 7 Nev. 249; *Tyler* v. *Wilkinson,* 4 Mason, 400; *Mason* v. *Hill,* 5 Barn. & A. 1; *Atchison* v. *Peterson,* 20 Wall. 507; Godd. on Ease. 251–2; Bainb. on M. & M. 100.)

IV. The doctrine of riparian proprietorship laid down in *Vansickle* v. *Haines, supra,* has become a rule of property in this state, and should be adhered to upon the principle of *stare*

---

1   87 Am. Dec. 128.

*decisis.* (*Rockhill* v. *Nelson*, 24 Ind. 422; *Bennett* v. *Bennett*, 34 Ala. 53; *Seale* v. *Mitchell*, 5 Cal. 402; *Linn* v. *Minor*, 4 Nev. 467; 1 Kent's Com. 476.)

V. The doctrine of riparian rights is fully applicable to our circumstances and the physical condition of this country.

VI. The supreme court of the United States has distinctly recognized the doctrine of riparian rights as a common-law doctrine. (*Beissell* v. *Scholl*, 4 Dall. 211; *Railroad* v. *Schurmeir*, 7 Wall. 288.) The case of *Broder* v. *Natoma Water Co.* is not applicable.

VII. The plaintiff has an absolute and indefeasible title to his land. He owns everything in it, — the soil, the trees, the stones, the water, — everything that a fee-simple owner can grant to a fee-simple grantee. It is agricultural land; all the water of the stream is indispensable to its vitality and fertility. The water constitutes its very life. He cannot legally be deprived of a valuable part of his estate without his consent.

*A. C. Ellis,* for Respondent:

[The brief of respondent contended that the question disposed of in *Vansickle* v. *Haines* was not raised in this case, and did not discuss the questions decided in this opinion.]

By the Court, HAWLEY, J.: —

A rehearing was granted in this case for the purpose of considering the specifications of error relied upon by appellant. The only question that can be determined under the specification is, "whether the court erred in rendering the judgment it did upon the findings." (*Jones* v. *Adams*, 17 Nev. 85.) The court declared, by its judgment and decree, that appellant was entitled to seven tenths of the water of Sierra Creek, and that respondent was entitled to three tenths, and gave to the respective parties the right to divert the amount of water awarded to them out of and away from the stream on their respective lands for the purpose of irrigation, and for their stock and domestic purposes. The evidence upon which the findings were made cannot be reviewed. Every material fact, not found, must be presumed in favor of the judgment. The third and fifth findings are as follows: —

(*Third.*) "That the plaintiff, Joseph Jones, is the owner of a usufruct in the waters of said stream, and that he and his

grantors first appropriated and used, and that he is the owner, by rights of appropriation and use, of seven-tenths part of all the water customarily flowing in said stream; that the plaintiff, Joseph Jones, is entitled to use, as the first appropriator, upon his said land, upon each and every part thereof, seven tenths of all the water customarily flowing in said Sierra Creek, and is entitled to divert the said water from the said stream upon his said land by means of flumes, ditches, or otherwise, and to use the same upon his said land for the irrigation thereof; and to use so much of the said seven tenths of said stream as is necessary for his stock and domestic purposes."

(*Fifth.*) "That the defendant, John Q. Adams, is the owner of a usufruct in the waters of said stream, and that he and his grantors, in the year 1860, appropriated and used, and that he is the owner, by right of appropriation and use, of three-tenths part of all the water customarily flowing in said stream; and that said defendant is entitled to use, as the first appropriator upon his said land and upon each and every part thereof, three tenths of all the water customarily flowing in said Sierra Creek; and is entitled to divert the said water from the said stream upon said land, by means of flumes, ditches, or otherwise, and to use the same upon his said land for the irrigation thereof; and to use so much of the said three-tenths part of said stream as is necessary for his stock and domestic purposes."

These findings support the judgment and decree. But it is argued by appellant that the judgment should have been rendered upon other findings which show that appellant, in 1865, acquired the title in fee to 320 acres of his land, and that said land is situate upon Sierra Creek, and upon both sides thereof; that respondent is the owner in fee of the land described in his answer which is situate upon the same creek, and that he is a riparian proprietor; that upon these facts the case should have been determined by the principles of the common law in relation to the rights of riparian proprietors, instead of upon the principle of prior appropriation; that the doctrine of appropriation and use of the waters of a stream has no application to a case where the parties, or either of them, have procured the title in fee to their lands from the government of the United States prior to the act of Congress of July 26, 1866. (Rev. St. U. S. 2339.) It does not appear from the findings

when respondent acquired the·fee to his land; and if it should be necessary, in order to support the judgment, that it should have been acquired prior to the act of Congress, we are bound, in the absence of any finding to the contrary, to presume it was before that time. If that fact was important, appellant should have asked for a definite finding upon that point. (*Warren* v. *Quill*, 8 Nev. 218.)

If the theory contended for by appellant, that this case should have been decided upon the principles pertaining to riparian rights should prevail, it would not follow, as claimed by him, that as a lower proprietor he would be entitled to *all* the water of the stream. This is not the law. We had occasion in *Warren* v. *Quill*, *supra*, to state that the inference must not be drawn "that, in any case, a riparian proprietor may take all the water of a stream for the purpose of irrigation, to the detriment of adjoining proprietors; for this is not the rule."

In *Vansickle* v. *Haines*, which is relied upon by appellant, the court use this language: "The common law does not, as seems to be claimed, deprive all of the right to use, but on the contrary allows all riparian proprietors to use it in any manner not incompatible with the rights of others. When it is said that a proprietor has the right to have a stream continue through his land, it is not intended to be said that he has the right to *all* the water, for that would render the stream, which belongs to all the proprietors, of no use to any. What is meant is, that no one can absolutely divert the whole stream, but must use it in such manner as not to injure those below him." (7 Nev. 286.)

In *Union M. & M. Co.* v. *Ferris*, where both parties obtained the title in fee to their lands prior to the act of Congress, the question as to the rights of riparian proprietors on a stream was elaborately discussed. The defendant claimed that in a hot and arid climate like Nevada, the use of water for irrigation was a natural want; that the upper proprietor on the stream might consume all the water for the purpose of irrigating his land; and that such use would be reasonable. The court, in considering this question said: "To lay down the arbitrary rule contended for by the defendant, and say that one proprietor on the stream has so unlimited a right to the use of the water for irrigation, seems to us an unnecessary destruction of

the rights of other proprietors on the stream, who have an *equal need and an equal right."* (2 Saw. 195.)

But the right to use water for the purpose of irrigation was expressly recognized. "Irrigation must be held in this climate to be a proper mode of using water by a riparian proprietor; the lawful extent of the use depending upon the circumstances of each case. With reference to these circumstances, the use must be reasonable, and the right must be exercised so as to do the least possible injury to others. There must be no unreasonable detention or consumption of the water. That there may be some detention and some diminution follows necessarily from any use whatever. How long it may be detained, or how much it may be diminished, can never be stated as an arbitrary or abstract rule." (2 Saw. 197.)

Under the rules of the common law, the riparian proprietors would all have the right to a reasonable use of the waters of a stream running through their respective lands for the purpose of irrigation. It is declared in all of the authorities upon this subject that it is impossible to lay down any precise rule which will be applicable to all cases. The question must be determined in each case with reference to the size of the stream, the velocity of the water, the character of the soil, the number of proprietors, the amount of water needed to irrigate the lands per acre, and a variety of other circumstances and conditions surrounding each particular case; the true test in all cases being, whether the use is of such a character as to materially affect the equally beneficial use of the waters of the stream by the other proprietors. In *Vansickle* v. *Haines*, the court quoted, with approval, the doctrine announced by Shaw, C. J., in *Elliot* v. *Fitchburg R. Co.*, 10 Cush. 194:[1] "That a portion of the water of a stream may be used for the purpose of irrigating land, we think is well established as one of the rights of the proprietors of the soil along or through which it passes. Yet a proprietor cannot, under color of that right, or for the actual purpose of irrigating his own land, wholly obstruct or divert the watercourse, or take such an unreasonable quantity of water, or make such unreasonable use of it, as to deprive other proprietors of the substantial benefits which they might derive from it, if not diverted or used unreasonably."

Numerous authorities were cited in support of this doctrine.

1  57 Am. Dec. 85.

(*Vansickle* v. *Haines*, 7 Nev. 287; *Farrell* v. *Richards*, 30 N. J. Eq. 515.)

When it is said that such use must be made of the water as not to affect the material rights of other proprietors, it is not meant that there cannot be any diminution or decrease of the flow of water; for if this should be the rule, then no one could have any valuable use of the water for irrigation, which must necessarily, in order to be beneficial, be so used as to absorb more or less of the water diverted for this purpose. The truth is, that under the principles of the common law in relation to riparian rights, if applicable to our circumstances and condition, there must be allowed to all, of that which is common, a reasonable use.

If the judgment had been based upon the findings in relation to riparian rights, it would, therefore, have been at least as favorable to respondent as it now is. The court would not have given either party the right to absolutely divert any portion of the water away from the stream, nor allowed to either any definite quantity or portion for the purpose of irrigation, but would have given to each a reasonable use of the water, and determined the question of reasonable use by the particular facts and circumstances as revealed by the evidence. Under the rules of the common law, the judgment and decree of the court would, perhaps, have to be modified so as to conform to the views we have expressed. (*Union M. & M. Co.* v. *Ferris*, 2 Saw. 199; *Same* v. *Dangberg*, Id. 458–460.)

But did the court err in rendering its judgment upon the rights of the parties, acquired by appropriation, as set forth in the third and fifth findings? In all of the Pacific coast states and territories, prior to the passage of the act of Congress of July 26, 1866, the doctrines of the common law, declaratory of the rights of riparian proprietors respecting the use of running waters, was held to be inapplicable, or applicable only to a very limited extent, to the wants and necessities of the people, whether engaged in mining, agricultural, or other pursuits; and it was decided that prior appropriation gave the better right to the use of the running waters to the extent, in quantity and quality, necessary for the uses to which the waters were applied. This was the universal custom of the coast, sanctioned by the laws and decisions of the courts in the respective states and territories, and approved and followed by the decisions of the

supreme court of the United States. In this condition of affairs, the Congress of the United States, on the twenty-sixth of July, 1866, passed the act "granting the right of way to ditch and canal owners over the public lands, and for other purposes," the ninth section of which reads as follows: "That whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed; *provided,* however, that whenever, after the passage of this act, any person or persons shall, in the construction of any ditch or canal, injure or damage the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage." (14 U. S. Stat. 253; Rev. Stat. U. S. 2339.)

In construing this action, the court, in *Vansickle* v. *Haines,* said: "The act of Congress of July, 1866, if it shows anything, shows that no diversion had previously been authorized; for, if it had, whence the necessity of passing that act, which appears simply to have been adopted to protect those who at that time were diverting water from its natural channel. Doubtless all patents issued or titles acquired from the United States since July, 1866, are obtained subject to the rights existing at that time. But this is a different case; for, if the appellant has any right to the water, he acquired it by the patent issued to him two years before that time, and with which, therefore, Congress could not interfere. But we do not understand it to be claimed that the act does directly affect this case, but that it is only referred to as exhibiting the policy of the general government. The answer is, that the policy began with that act, was never in any way sanctioned or suggested prior to the time of its passage, and therefore has nothing to do with this case." (7 Nev. 280.)

In *Union M. & M. Co.* v. *Ferris, supra,* it was claimed by the defendants that the act of Congress confirmed their rights acquired by priority of appropriation; but the court ignored this claim, and indorsed the doctrines enunciated by the court

in *Vansickle* v. *Haines.* We are of opinion that the ninth section of the act of Congress confirmed to the owners of water-rights of the public lands of the United States the same r'ghts which they held under the local customs, laws, and decisions of the courts prior to its enactment; that the act of Congress did not introduce, and was not intended to introduce, any new system, or to evince any new or different policy upon the part of the general government; that it recognized, sanctioned, protected, and confirmed the system already established by the customs, laws, and decisions of courts, and provided for its continuance.

We had occasion in *Barnes* v. *Sabron,* 10 Nev. 230, to quote with approval the doctrines announced by the supreme court of the United States in *Basey* v. *Gallagher,* that the government, by its silent acquiescence, had assented to and encouraged the occupation of the public lands for mining purposes; that he who first connected his labor with the property open to general exploration, in natural justice acquired a better right to its use and enjoyment than others who had not given such labor; that the miners on the public lands and throughout the Pacific states and territories, by their customs, usages, and regulations, had recognized the inherent justice of this principle, and that it had been recognized by legislation, and enforced by the courts, and finally approved by the legislation of Congress in 1866; that this principle was equally applicable to the use of water on the public lands for purposes of irrigation; and we declared that it logically followed, from the legal principles announced in that case, that the first appropriator of the waters of a stream had the right to insist that the water flowing therein should, " during the irrigating season, be subject to his reasonable use and enjoyment to the full extent of his original appropriation and beneficial use."

In *Basey* v. *Gallagher,* the court, after quoting the ninth section of the act of Congress, said: " It is very evident that Congress intended, although the language used is not happy, to recognize as valid the customary law with respect to the use of water which had grown up among the occupants of public lands under the peculiar necessities of their condition; and that law may be shown by evidence of the local customs, or by the legislation of the state or territory, or the decisions of the courts. The union of the three conditions in any particular

case is not essential to the perfection of the right by priority; and in case of conflict between a local custom and a statutory regulation, the latter, as of superior authority, must necessarily control." (20 Wall. 683.)

In *Jennison* v. *Kirk*, counsel for plaintiff contended that, of the two rights mentioned in the ninth section of the act of Congress, only the right to the use of water on the public lands, acquired by priority of possession, is dependent upon local customs, laws, and decisions of the courts; and that the right of way over such lands for the construction of ditches and canals is conferred absolutely upon those who have acquired the water right, and is not subject in its enjoyment to the local customs, laws, and decisions. The court refused to sustain this position. It said: "The object of the section was to give the sanction of the United States, the proprietor of lands, to possessory rights, which had previously rested solely upon the local customs, laws, and decisions of the courts, and to prevent such rights from being lost on a sale of the lands. The section is to be read in connection with other provisions of the act of which it is a part, and in the light of matters of public history relating to the mineral lands of the United States."

After stating, at considerable length, the history of the discovery of gold in California, the adoption by the miners—in their love of order, system, and fair dealing—of rules and regulations for the government of their property rights; the recognition of the rights, by prior appropriation, to the water of a stream conveyed away from its natural channel for mining or other beneficial purposes; the fact that the doctrines of the common law respecting the rights of riparian owners were not considered as applicable, or only in a very limited degree, to the condition of the miners; that the waters of rivers and lakes were carried great distances in ditches and flumes, constructed with vast labor and enormous expenditure of money, along the sides of mountains, and through cañons and ravines, to supply communities engaged in mining, as well as for agriculturalists and for ordinary consumption, and giving the views of the author of the act of Congress and interpreting its several sections, the court, speaking of the ninth section, said: " In other words, the United States by the section said that whenever rights to the use of water by priority of possession had become vested, and were recognized by the local customs, laws,

and decisions of the court, the owners and possessors should be protected in them; and that the right of way for ditches and canals, incident to such water rights, being recognized in the same manner, should be acknowledged and confirmed; but where ditches subsequently constructed injured by their construction the possession of others on the public domain, the owners of such ditches should be liable for the injuries sustained. Any other construction would be inconsistent with the general purpose of the act, which, as already stated, was to give the sanction of the government to possessory rights acquired under the local customs, laws, and decisions of the courts." (98 U. S. 460.)

In *Broder* v. *Natoma Water Co.*, the court said: "It is the established doctrine of this court that rights of miners, who had taken possession of mines and worked and developed them, and the rights of persons who had constructed canals and ditches to be used in mining operations and for purposes of agricultural irrigation in the region where such artificial use of the water was an absolute necessity, are rights which the government had, by its conduct, recognized and encouraged, and was bound to protect, before the passage of the act of 1866. We are of opinion that the section of the act which we have quoted was rather a voluntary *recognition of a pre-existing right of possession*, constituting a valid claim to its continued use, than the establishment of a new one." (101 U. S. 276, and authorities there cited; *Coffin* v. *Left-hand Ditch Co.*, 6 Colo. 443; opinion by Ross, J., in *Lux* v. *Haggin*, 69 Cal. 255.)

It necessarily follows from the views we have expressed, and from the doctrines announced in the authorities we have cited, that the court did not err in rendering its judgment and decree upon the findings in relation to prior appropriation. The case of *Vansickle* v. *Haines*, in so far as the same is in conflict with the views herein expressed, is hereby overruled.

The judgment of the district court is affirmed.