DAVID G. RUPERT BY GORDON A. RUPERT, HIS FATHER AND GUARDIAN AD LITEM, AND GORDON A. RUPERT, INDIVIDUALLY AND BEVERLY M. STIENNE, APPELLANTS, v. ANDRE JEAN STIENNE AND ANN HARPER RUPERT, RESPONDENTS.

No. 7601

December 2, 1974                    528 P.2d 1013

*Rice & Goedert,* of Reno, for Appellants.

*Vargas, Bartlett & Dixon* and *J. Rayner Kjeldsen,* of Reno, for Respondents.

**OPINION**

By the Court, BATJER, J.:

In this consolidated appeal we are asked to reconsider this court's announced position on interspousal and parental tort immunity. Morrissett v. Morrissett, 80 Nev. 566, 397 P.2d 184 (1964), Kennedy v. Kennedy, 76 Nev. 302, 352 P.2d 833 (1960), and Strong v. Strong, 70 Nev. 290, 267 P.2d 240, 269 (1954).

*STIENNE:*

This case deals with the question of responsibility for injuries to one spouse caused by the negligent operation of a motor vehicle by the other.

Beverly Stienne was injured while riding in an automobile driven by her husband, Andre Stienne. The accident resulted from a collision with a vehicle driven by Siefried Wagner. Mrs. Stienne filed suit against her spouse and Wagner for injuries she sustained in the accident. The Wagner litigation has not yet been concluded, and is not now before this court.

The district court granted the respondent Andre's motion for summary judgment based solely upon the doctrine of interspousal immunity as announced in Morrissett v. Morrissett, supra, and Kennedy v. Kennedy, supra, which precludes tort action by one spouse against another. Pursuant to the provisions of NRCP 54(b),[1] the district court expressly determined that there was no just cause for delay and directed the entry of judgment. This appeal followed.

In *Kennedy,* this court declared that the common law rule that a wife could not sue her husband for a personal tort prevailed in Nevada in the absence of a permissive statute to the contrary, and in *Morrissett* said: "We feel that any change in the common law rule of interspousal immunity with respect to personal torts must be made by the legislature." That position ignored the fact that the rule is not one made or sanctioned by the legislature, but rather is one that depends for its origin and continued viability upon the common law. Freehe v. Freehe, 500 P.2d 771, 775 (Wash. 1972). Having been created and preserved by the courts, the doctrine is subject to amendment, modification and abrogation by the courts if current conditions so dictate.

Although NRS 1.030 provides that "the common law of England so far as it is not repugnant to or in conflict with the Constitution and the laws of the United States or the constitution and laws of this state shall be the rule of decision in all courts of this state," it does not require this court to follow forever the common law doctrines of interspousal tort immunity. Despite NRS 1.030, courts may reject the common law where it is not applicable to local conditions. In State ex rel. George v. Swift, 10 Nev. 176, 183 (1875), this court said: "*If applicable to our condition* and not abrogated by constitutional or statutory provision, it was, and is, binding

---

[1]NRCP 54(b): "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

upon the courts of every State that has adopted the common law as the rule of decision. Moreover, being founded upon the gravest considerations of public policy, and expressing the wisdom derived from centuries of experience, it would seem that such a rule should not be lightly departed from." (Emphasis added.)

This court rejected the common law rule of England which decreed that agreements to submit any and all disputes to arbitration were unenforceable and ruled instead that an agreement to arbitrate a future dispute was valid and enforceable. United Assn. of Journeymen v. Stine, 76 Nev. 189, 351 P.2d 965 (1960). This court has also rejected the common law doctrine of riparian rights. Jones v. Adams, 19 Nev. 78, 87, 6 P. 442 (1885) (overruling Vansickle v. Haines, 7 Nev. 249 (1872)); Walsh v. Wallace, 26 Nev. 299, 327, 67 P. 914 (1902); Reno Smelting Works v. Stevenson, 20 Nev. 269, 21 P. 317 (1889).

The Supreme Court of Oregon in In re Hood River, 227 P. 1065, 1083, 114 Ore. 112 (1924), after citing and discussing the holding in Reno Smelting Works v. Stevenson, supra, went on to say: "The very essence of the common law is flexibility and adaptability * * *. It finds widely different expression in different jurisdictions. If the common law should become so crystalized and its expression must take on the same form wherever the common-law system prevails, irrespective of physical, social, or other conditions peculiar to the locality, it would cease to be the common law of history, and would be an inelastic and arbitrary code. It is one of the established principles of the common law, which has been carried along with its growth, that precedents must yield to the reason of different or modified conditions." Id. 227 P. 1086, 1087.

The doctrine of *stare decisis* must not be so narrowly pursued that the body of the common law is forever encased in a straight jacket. In State v. Culver, 129 A.2d 715, 721 (N.J. 1957), Chief Justice Vanderbilt wrote: ". . . One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time

a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his interpretations of Legal History (1922) when he stated: 'Law must be stable, and yet it cannot stand still.' "

As in any case involving an attack upon a common law principle, we must reexamine the reasons behind the doctrine of interspousal immunity. State ex rel. George v. Swift, 10 Nev. 176 (1875).

At common law, a husband and wife were regarded as one because a metaphysical merger had taken place, and the legal existence of the wife had merged with that of the husband. Under this concept, either spouse was precluded from maintaining an action against the other for wrongful conduct whether intentional or negligent. 1 Blackstone Commentaries 442; Prosser, The Law of Torts, Ch. 23, Sec. 122, 4th Ed. 1971. This artificial concept cannot be seriously defended today and is not compatible with our current conditions.

The doctrine of interspousal tort immunity has been perpetuated on the notion that it fosters domestic tranquility and prevents fraud and collusion, and it has been frequently argued that fraudulent and collusive suits would flow from abandonment of the rule. There is a possibility of fraud or collusion in every negligence action where the tort-feasor is insured. Where the adversaries are husband and wife, not only are the parties in close personal relationship, but any recovery will inure to the benefit of the entire family, and the failure to recover will affect the entire family adversely.

However, to deny one spouse the opportunity to recover for the tortious conduct of the other because of the possibility of fraud and collusion, belies the centuries old trust in our jury system. An interspousal tort claim should not be saddled with the presumption of fraud *ab initio*. Courtney v. Courtney, 87 P.2d 660 (Okla. 1938). Our adversary system will ferret out the nonmeritorious claims and dispatch those who would practice fraud upon the courts.

In Klein v. Klein, 376 P.2d 70, 73 (Cal. 1962), the California Supreme Court announced its position with regard to interspousal tort immunity and the collusion argument when it said: "It would be a sad commentary on the law if we were to admit that the judicial processes are so ineffective that we

must deny relief to a person otherwise entitled simply because in some future case a litigant may be guilty of fraud or collusion. Once that concept were accepted, then all causes of action should be abolished. Our legal system is not that ineffectual." As Justice Thompson pointed out in his dissent in *Morrissett:* "Photography, scientific investigative procedures, pretrial discovery, cross examination, etc., are usually adequate safeguards against the fabricated claim. Trial courts and jurors are sensitive to the 'trumped up' charge."

Marital discord which would purportedly stem from interspousal tort suits is equally non-persuasive as a reason for retention of the doctrine.

Interspousal suits are allowed in actions not sounding in tort. In Nevada a husband has been permitted to bring an action and recover money loaned by him to his wife for the improvement of her separate property. Kraemer v. Kraemer, 76 Nev. 265, 352 P.2d 253 (1960). In numerous cases decided in other jurisdictions one spouse has been permitted to bring an action against the other for a variety of torts committed against the complaining spouse's property rights. Prosser, The Law of Torts, Ch. 23, Sec. 122. Those actions are as likely to bring about conjugal discord, as are actions for personal torts, yet only personal tort claims have been precluded upon the ground that they would shatter the harmony of the family. Self v. Self, 376 P.2d 65, 69 (Cal. 1962).

Such characterization runs against our fundamental concept of tort law. A person proximately injured by the act of another, whether wilfully or negligently, should, unless it is against public policy, be compensated. Klein v. Klein, supra. In abandoning the doctrine of interspousal immunity, the Supreme Court of the State of Washington reasoned that if a state of peace and tranquility existed, then no action would be commenced, or the spouses would allow the action to continue only so long as the tranquility was preserved. Freehe v. Freehe, supra. The state of matrimony alone is not a sufficient justification for preventing suit on an actionable wrong.

To a degree we have already abandoned the doctrine of interspousal tort immunity. In Pearce v. Boberg, 89 Nev. 266, 510 P.2d 1358 (1973), we affirmed the judgment allowing damages in favor of a wife against her husband for injuries sustained in a motor vehicle accident which occurred shortly before their marriage. The spector of fraud and collusion as well as disruption of the peace and harmony of the marriage

certainly lurked in that case, yet, the doctrine of interspousal immunity was not allowed to bar the action by the wife.

Congestion in the courts is a further objection raised against abolition of the immunity. This position is not supportable. Jurisdictions which have abolished the immunity are not experiencing increased congestion due to such suits. Freehe v. Freehe, supra, citing Prosser, Torts (4th Ed. 1971) § 122, p. 864.

The Nevada Motor Vehicle Insurance Act, NRS Ch. 698, requires automobile owners to purchase policies of insurance or other security which would provide medical, surgical, funeral and disability benefits for every person, unless specifically excluded, who suffers a loss from injury arising out of the maintenance or use of a motor vehicle, without regard to immunity from liability, if the accident occurs in this state. NRS 698.230.[2] Spouses and children of the insured are covered as well as others. NRS Ch. 698, by requiring, in certain instances, one spouse to insure against the other spouse's injuries, will substantially diminish any justification which may have existed for interspousal tort immunity in this state. See NRS 698.250.[3]

The recognition that damages received as a result of personal injury are the separate property of the injured spouse, lends additional support to the arguments against the immunity. See NRS 41.170; Choate v. Ransom, 74 Nev. 100, 323 P.2d 700 (1958); F. & W. Construction Co. v. Boyd, 60 Nev. 117, 102 P.2d 627 (1940); Self v. Self, supra.

Although, no less authority than the United States Supreme Court once said: Any change in the common law rule of interspousal immunity with respect to personal torts must be made by the legislature (Thompson v. Thompson, 218 U.S. 611 (1910)), we believe that the time has arrived to abrogate the doctrine.

The "conditions" referred to in *Swift* and subsequent cases dealing with demanded changes in the common law are current conditions. They are not the conditions which existed

---

[2]NRS 698.230: "If the accident causing injury occurs in this state, every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits unless such benefits are excluded under the provisions of NRS 698.340."

[3]NRS 698.250: "(2) Basic reparation obligors . . . shall pay basic reparation benefits . . . for loss from injury arising out of the maintenance or use of a motor vehicle. This obligation exists *without regard to immunity from liability or suit which might otherwise be applicable*." (Emphasis added.)

when the United States Constitution was adopted, or when Nevada gained statehood, or even when NRS 1.030 was first enacted, but conditions which exist today.

For the foregoing reasons we overrule *Morrissett*. In departing from the doctrine of interspousal immunity, we explicity limit our opinion for the present to claims arising out of motor vehicle accidents. The propriety of further departure from the doctrine in other tort situations must await presentation of the issue as those situations may arise.

*RUPERT:*

David Rupert was injured while riding in an automobile operated by his mother, Ann Harper Rupert. Their vehicle was involved in a collision with a vehicle driven by William McCollum. David Rupert brought this action, by and through his father, Gordon A. Rupert, as guardian ad litem, against his mother and the driver of the other vehicle, for injuries he allegedly sustained in the collision. Gordon also brought an action individually seeking special damages from Ann on account of David's medical and hospital expenses, and for loss of David's services. The litigation against McCollum has been voluntarily dismissed by Gordon A. Rupert individually, and as guardian ad litem for David, and is not now before this court.

A motion for summary judgment was filed by Ann asserting that the doctrines of interspousal and parental immunity precluded the suit. Relying upon Strong v. Strong, supra; Morrissett v. Morrissett, supra, and Kennedy v. Kennedy, supra, the trial court ordered summary judgment, and pursuant to the provisions of NRCP 54(b) expressly determined that there was no just cause for delay, and directed the entry of judgment. This appeal followed.

The respondents erroneously contend that Strong v. Strong, supra, held that an unemancipated minor cannot maintain a tort action against his parents, when in fact *Strong* erroneously held that Nevada's wrongful death statute (8554 N.C.L. 1931–1941 Supp., now NRS 41.080) did not repeal the common law rule of immunity of the parent from suit by a minor child. There is no common law rule of parental immunity.

Such a doctrine is not found in the common law of England.

The doctrine of parental immunity[4] is exclusively a rule of American case law first announced in Hewellette v. George, 9 So. 885, 887 (Miss. 1891), where a minor daughter was precluded from bringing an action against her mother for maliciously committing her to an insane asylum. The doctrine was soon adopted in the State of Tennessee when a minor child was denied the right to sue her father and stepmother for cruel and inhuman treatment (McKelvey v. McKelvey, 77 S.W. 664 (Tenn. 1903), and a minor was barred in the State of Washington for bringing a tort action against her father for rape upon the ground that society had an interest in preserving harmony in domestic relations. Roller v. Roller, 79 P. 788 (Wash. 1905).

This court compounded its error of assigning common law status to parental immunity when in a footnote in Strong v. Strong, supra, it wrote: ". . . [A] public policy departing from the common-law rule must find its expression in an Act of the legislature." See State ex rel. George v. Swift, supra; United Assn. of Journeymen v. Stine, supra; Jones v. Adams, supra; Walsh v. Wallace, supra; Reno Smelting Works v. Stevenson, supra.

Because *Strong* announced no rule of law and was decided upon a false premise, its effect is limited to that case.

There are no constitutional or statutory provisions which compel the application of the doctrine of parental immunity in this state, nor is it the rule of decision. NRS 1.030. Because the doctrine has not been adopted in this state, the right of a child to sue a parent in tort is without restriction or limitation. Insofar as the holding in Strong v. Strong, supra, is inconsistent with the holding in this case, it is hereby overruled.

For the reasons announced in the companion case of Stienne v. Stienne, the doctrine of interspousal immunity as it has been applied to the complaint of Gordon A. Rupert, individually, is rejected.

These consolidated cases are reversed and remanded for further proceedings not inconsistent with this opinion.

THOMPSON, C. J., and MOWBRAY, GUNDERSON, and ZENOFF, JJ., concur.

---

[4]The doctrine of "parental immunity" is reciprocal. Actions by parents against their unemancipated children are barred as well as actions by unemancipated children against their parents.