**Margaret TADER, Appellant (Plaintiff),**

v.

**William TADER, Appellee (Defendant),**

**Overland West, Inc., a Utah corporation, The Hertz Corporation, a Delaware corporation, and Hertz System, Inc., a Delaware corporation, (Defendants).**

No. 86–316.

Supreme Court of Wyoming.

June 5, 1987.

Robert N. Williams, Jackson, and Patrick J. Kenneally, Ltd., Chicago, Ill., for appellant.

J. Scott Burnworth of Schwartz, Bon, McCrary & Walker, Casper, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

The question whether interspousal tort immunity should be abrogated in Wyoming comes to this court from trial court entry of a partial summary judgment in favor of the defendant husband. We answer the question in the affirmative and reverse the partial summary judgment.

While being driven by William Tader in December, 1982 in Teton County, a rental car lacking snow tires went into a skid and

struck another vehicle head-on. Mr. Tader's passenger, his wife, Margaret Tader, was seriously injured.

In the resulting litigation, Margaret Tader filed suit against her husband, the car rental agency, and Hertz Corporation. The case comes to this court by trial court decision that the wife, now appellant, by the application of interspousal immunity was not entitled to recover any amount greater than $10,000.00, which was the minimum requirement under the Wyoming Motor Vehicle Safety-Responsibility Act, § 31–9–101 et seq., W.S.1977, and the Uninsured Motor Vehicle statute, § 31–10–101, W.S.1977. Actual negligence liability has not been determined.[1]

## WYOMING CASE PRECEDENT

Five cases are cited as precedent by appellee to justify the continued application of the immunity doctrine. In *McKinney v. McKinney*, 59 Wyo. 204, 135 P.2d 940

(1943), Tom McKinney, a fabled practitioner of the legal arts in Wyoming, was alleged to have "operated said automobile in a grossly negligent manner" which resulted in a severe injury to his 39–year old wife. A demurrer was filed and sustained, and on appeal one justice voted to retain the immunity doctrine as a justification for complaint denial, a second justice, Justice Blume, contended that the demurrer was well placed because it pleaded the husband-and-wife status and did not plead insurance, with leave remaining upon remand to replead, and the third justice dissented, contending that the Married Women's Act made fundamental changes in the law, and that

"There is * * * no rule of law or morals that gives a husband the right to inflict a personal injury on his wife." 135 P.2d at 958.

From that stage of vacuous authority, this court, with two different justices sit-

---

1. Disposition of the claims against the rental dealership and Hertz has not occurred. Although the summary-judgment order recited the terminology of Rule 54(b), W.R.C.P., "no just reason for delay," this court dismissed the appeal and granted certiorari on the sole question of "whether interspousal tort immunity should be abrogated in Wyoming."

In that order, this court provided:

"* * * the order [from which appeal is taken] purports to comply with the provisions of Rule 54(b), W.R.C.P.; the order is not a final order because it does not dispose of all the claims or the rights and liabilities of all the parties; the order does not finally dispose of the rights and liabilities of Margaret Tader and William Tader; the district court did not furnish any reason or explanation for its finding that there is no just reason for delaying the entry of judgment and adjudging this to be a final, appealable order; the district court abused its discretion in finding that there is no just reason for delaying the entry of judgment and adjudging this to be a final, appealable order; the appeal in this case should be dismissed; the issue presented is a significant one, however, and disposing of it at this time would materially aid judicial efficiency; the Court should entertain the issue pursuant to its constitutional power to issue writs of certiorari; review should be entertained as though a petition for writ of certiorari had been filed and granted; the only issue to be addressed on review is:

"'Whether interspousal tort immunity should be abrogated in Wyoming.'"

Comprehensive and persuasive discussion of the use of the no-just-cause-for-delay final order

is presented in *Cullen v. Margiotta*, 811 F.2d 698 (2d Cir.1987). For the purpose of future appellate review in partial final judgment cases, we adopt the following:

"By the terms of the Rule, the court may direct entry of a partial final judgment either (1) disposing of claims of or against fewer than all of the parties to the case or (2) disposing of fewer than all of the claims. In either context, the matter of whether to direct the entry of a partial final judgment in advance of the final adjudication of all of the claims in the suit must be considered in light of the goal of judicial economy as served by the ' "historic federal policy against piecemeal appeals.' " [Citations.] Respect for that goal requires that the court's power to enter a final judgment before the entire case is concluded, and thereby permit an aggrieved party to take an immediate appeal, be exercised sparingly.

* * * * * *

"Since the appellate court may review the Rule 54(b) certification for abuse of discretion, it does not suffice for the district court to announce its determination that 'there is no just cause for delay' in conclusory form. Rather, its certification must be accompanied by a reasoned, even if brief, explanation of its conclusion. [Citation.] In reviewing the explanation, if the question of whether certification should have been granted is a close one, we will normally accept it if that course 'will make possible a more expeditious and just result for all parties.' [Citation.]" 811 F.2d at 710–711.

ting, considered parental immunity in *Ball v. Ball*, 73 Wyo. 29, 269 P.2d 302 (1954). The demurrer was again sustained in trial court, and this court affirmed, holding that the unemancipated minor son by his natural mother as next friend, could not sue and obtain a judgment against the natural father based on simple negligence, whether or not insured.

Next, in *Vossler v. Peterson*, Wyo., 480 P.2d 393 (1971), we encountered a tort suit by the employee husband against the employer for injuries sustained from the alleged negligence of a co-employee, the spouse. Although the opinion included dicta to suggest that insurance would not be a determinative factor, the Vossler court declined to rule on the validity of such a suit, and reversed the case to allow a more comprehensive trial court record to be developed. A concurring opinion emphasized that no decision was being made about the effect of insurance.

Then came *Oldman v. Bartshe*, Wyo., 480 P.2d 99 (1971), an action by the administrator of the estate of a child against the administratrix of the estate of the deceased father for wrongful death. A motion to dismiss for failure to state a claim based on family immunity was granted by the trial court. This court reversed, and distinguished Ball, without clearly defining what the parameters of a right of action might be.

Lastly, we considered the subject of family immunity in a dispute between the Insurance Commissioner and Allstate Insurance Company, *Allstate Insurance Company v. Wyoming Insurance Department*, Wyo., 672 P.2d 810 (1983), in regard to the sweep and parameters of a family exclusion in the Allstate automobile policy clause as being contendably contrary to the stated public policy of Wyoming in the Motor Vehicle Safety-Responsibility Act. The majority agreed with the Insurance Commissioner (present District Judge John T. Langdon) and voided the exclusion to the extent of the required coverage. Two justices specially concurred, but in their discussion strongly supported the continued existence of interspousal and interfamily immunity.

Separately, we are led by brief and oral argument to *McClellan v. Tottenhoff*, Wyo., 666 P.2d 408 (1983), where dramshop liability was prospectively enunciated. The dissent in this three-to-two opinion concluded that imposition of liability for bar-owner misconduct should be constrained to the legislature.

Addressing, then, the issue of interspousal immunity, and confining this decision solely to that issue here presented by certiorari, we do not find anything in past precedent of this court or the obvious trend in national cases which would disfavor abrogation or justify our retention of the outdated inhibition of equality.[2]

In review of the cases where the doctrine has been repudiated, the explanation and discussion ranges from a comprehensive historical analysis back to Roman law, with exhaustive case evaluation from many jurisdictions, to the simplistic statement of other courts that the time has come and no justification for retention remains. Perhaps as justified as any reason, is the fact that if two married Wyomingites leave on an automobile journey, if they go to North Dakota, South Dakota, Nebraska, or Colorado, no interspousal immunity will be encountered. However, if traveling to Montana only, or while traveling through Utah and then on to Oregon, the doctrine apparently continues. In philosophic contemplation, it could be asked why citizens in-state enjoy less rights than encountered in most other states where they might choose to travel.

---

2. When *McKinney v. McKinney*, supra, was written, it was said that the clear majority favored the doctrine. It is apparent that the national trend is specifically to the contrary, and that the majority of jurisdictions have abrogated interspousal immunity completely, or at least in operation of a motor vehicle. See Annot., 92 A.L. R.3d 901, and cases cited therein and in the supplement. Since that annotation was originally written in 1979, and the earlier annotation on the subject, 43 A.L.R.2d 632 was written in 1955, the movement and the weight of the law is clearly apparent.

Two more persuasive philosophic bases for abrogation are present. The jurisprudence of this nation has moved too far into exception-written, pigeonholed, result-oriented conclusions. To the extent compatible with other soundly based criteria, standards of general application and rules of comprehensive persuasion are singularly beneficial. *Simpson v. Kistler Investment Company*, Wyo., 713 P.2d 751 (1986). We believe that a direction of the Wyoming jurisprudence that affords liability for negligence without "only ifs" or "but not nows" gives cogently justified and rationally understood justice to our citizens.

We have a second reason to consider the character-determined immunity involved in the relationship between husband and wife. If we consider the rights provided in Art. 1, § 6, Wyoming Constitution, due process; Art. 1, § 34, Wyoming Constitution, uniform operation; and Art. 10, § 4, Wyoming Constitution, proscribing the enactment of laws limiting the amount of damage to be recovered, it is hard to find a philosophic basis in constitutional guarantees to justify an exception when one spouse through negligence or intentional conduct injures another.

The age-old contentions of invoked family disharmony and conjectural insurance fraud weigh no greater with this court than with a present significant majority of other jurisdictions where also rejected. Some well-phrased comments extricated from the multitude of cases are illustrative:

> "What thus unfolds from a canvass of the doctrine of interspousal immunity across the country is that its application is far from consistent or uniform; its efficacy as a legal principle has divided jurisdictions; and its utility as a social tool or instrument of justice has confounded courts, legislators and commentators. It is clear, nonetheless, that despite its survival in varying forms, interspousal immunity is no longer the doctrinal monolith it was in olden times." *Merenoff v. Merenoff*, 76 N.J. 535, 388 A.2d 951, 955 (1978).

> "Whatever may be the law elsewhere, if the common-law fiction of unity ever existed in this state, it does not exist here now. *Hedlund v. Hedlund*, 87 Colo. 607, 290 P. 285, 286 [1930], and the statute and cases there cited. In the Hedlund Case we said: 'First, it is assumed that the common-law fiction that husband and wife are one still persists in this state. In *Whyman v. Johnston*, 62 Colo. 461, 163 P. 76 [1935], we said that the fiction of one legal personality no longer exists. One has but to read the statutes of the state and the decisions of this court and of the Court of Appeals to realize that in the present state of the law the so-called unity of husband and wife is a mere figure of speech no longer having any practical significance.' " *Rains v. Rains*, 97 Colo. 19, 46 P.2d 740, 742 (1935).

> "Section 6, article 2, Colorado Constitution, is as follows: 'That courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character. * * *' In this state a wife, as we have seen, is a person independent of the husband, and this section guarantees her a remedy for every personal injury without making any exception as to the person inflicting the injury, who may be her husband or a third person." Id. at 742.

As wisdom demonstrated in 1935:

> "We are not unaware of the fact that in the greater number of jurisdictions the courts have held that the wife cannot sue the husband for an injury to her person. * * * In some of the cases the courts construed statutes wholly unlike ours; in others, the statutes somewhat resemble ours; and in still others, the statutes are practically the same as ours. It would be a fruitless task to discuss the various terms of the many statutes. To attempt to reconcile the decisions would be to attempt the impossible. In 13 R.C.L. pp. 1396, 1397 it is said: 'Opposed to the general view taken by the courts as to the effect of the married women's statutes on her right to sue her husband for a tort committed by him on her person, the statutes have been construed in several very recent cases to so abrogate the common law fiction of the identity of husband and wife as to permit a wife to

maintain an action against her husband for a tort to her person. And it has been said that apart from the consideration of the particular forms of statutes involved, the opinions in these recent cases together with the dissents in earlier cases construing statutes concerning married women's rights, seem to indicate a growing inclination to construe such statutes liberally, and, if possible, to give this right of action thereunder, and not to consider it as opposed to "public policy" so to do.'" Id. at 742–743.

"* * * Nor can we foresee that personal injury suits between spouses will be any more damaging to marital harmony than the multiplicity of property and contract actions currently permitted." *Townsend v. Townsend,* Mo., 708 S.W.2d 646, 650 (1986).

"The legal abstraction of unity, now an historical oddity rather than a functioning concept of law, is no longer available to support retention of interspousal immunity. Moreover, we are not convinced that family harmony can be preserved and fraud prevented by continued application of the doctrine. Finding no plausible reasons for retaining it, and cognizant of the high cost exacted by the rule because of the absolute bar it places in the path of potentially meritorious claims, we hold that interspousal tort immunity is totally abolished in this State. All decisions to the contrary are overruled." *Davis v. Davis,* Tenn., 657 S.W.2d 753, 759 (1983).

Applying Nebraska's "married woman's act":

"Having concluded that the reasons for adopting the doctrine in the first instance are no longer judicially sound, and finding no legislative barriers existing, we hereby abrogate the common law doctrine of interspousal tort immunity. This approach completely reflects both the spirit and the letter of section 25–305, R.R.S.1943, 'A woman may while married sue and be sued in the same manner as if she were unmarried' and Article 1, section 13 of the Constitution of the State of Nebraska which provides: 'All courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay.'" *Imig v. March,* 203 Neb. 537, 279 N.W.2d 382, 386 (1979).

Finally, we concur in the logic of the Nevada Supreme Court:

"The doctrine of *stare decisis* must not be so narrowly pursued that the body of the common law is forever encased in a straight jacket. In *State v. Culver,* 23 N.J. 495, 129 A.2d 715, 721 (1957), Chief Justice Vanderbilt wrote: '... One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his interpretations of Legal History (1922) when he stated: "Law must be stable, and yet it cannot stand still."'

"As in any case involving an attack upon a common law principle, we must reexamine the reasons behind the doctrine of interspousal immunity." *Rupert v. Stienne,* 90 Nev. 397, 528 P.2d 1013, 1015 (1974).

We answer the question submitted by certiorari in the affirmative that interspousal tort immunity should be abrogated in Wyoming, and determine the result to be applied both prospectively and retroactively to any cause of action not yet matured to the entry of a final order, decree, or judgment as of the date of issuance of this opinion.

Remanded to the trial court for further proceedings in conformity herewith.

BROWN, Chief Justice, dissenting.

The traditional justification for interspousal tort immunity is that such immunity tends to promote domestic harmony and affords protection against friendly lawsuits. Perhaps universal liability insurance has effectively eliminated promoting domestic harmony as a reason for interspousal immunity. Now that one spouse can sue the other and thus greatly augment the family coffers, domestic harmony may, in fact, be greatly enhanced. A husband may love his wife all the more if she can make them all wealthy.

I do not suppose that a husband would purposely injure his wife so that she could file suit against him. However, once a fortuitous injury occurs, the husband will not defend himself in a lawsuit his wife brings for her personal injuries. In fact, not only will he admit liability, but he will exaggerate her injuries in order to help increase her recovery. In doing this he will be acting in his own interest. The more money the wife brings into the family, the less the husband will have to work.

With the abrogation of interspousal immunity, interfamily immunity must also fall. The same rationale for abrogating interspousal immunity applies equally to interfamily immunity. By the authority of this case mama can now sue dad and receive damages under the automobile liability policy; a child who slips on the front porch can sue mom and dad and collect damages under the family home owners policy. Families may find it more profitable to sue each other than work. Mom, dad and the kids can take all this insurance money, quit work, move to Hawaii and live happily ever after.

In abrogating interspousal immunity this court and other courts talk about lofty constitutional principles, women's rights legislation and principles of property law.

These courts pretend that insurance is not a factor in their determination. It is a fiction and insurance is the only real factor. In the real world everyone knows that were it not for liability insurance no one would have any concern about abrogating interspousal immunity.

A woman, dancing with her husband (in Chicago or Cheyenne), who injures her back when negligently thrown to the floor would give no thought to suing her husband. The reason being that there is no liability insurance for injuring a wife while dancing. On the other hand, if this same man negligently injures his wife in an automobile accident, as surely as night follows day, he will be sued by her for personal injuries. The reason: there is liability insurance to cover this type of injury. Still courts say with "a straight face" that insurance is not a consideration.

We live in a dream world if we think a suit between husband and wife, for personal injuries, will bear any resemblance to an adversarial proceeding. Abrogation of interspousal immunity encourages fraud, and collusion, and facilitates overly friendly lawsuits between husband and wife.

The courts do more than their share to fuel the growth of the rapidly expanding industry of litigation. By creating a new cause of action, this court is making interfamily litigation a cottage industry. This affords employment for more lawyers. If we have more lawyers, we need more judges. Creation of all these new jobs helps redistribute the wealth. Fueling the growth industry of litigation would be an estimable goal if an inexhaustible reservoir of manna existed.

I would affirm the district court.